EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Peticionario<br><br>        v.<br><br>Danny Serrano Morales<br><br>    Recurrido | Certiorari<br><br>2018 TSPR 193<br><br>201 DPR ____ |

Número del Caso: CC-2016-983

Fecha: 4 de diciembre de 2018

Tribunal de Apelaciones:

        Región Judicial de Bayamón-Aibonito, Panel VI

 Oficina de la Procuradora General:

        Lcda. Margarita Mercado Echegaray
        Procuradora General

        Lcda. Mónica Cordero Vázquez
        Procurador General Auxiliar

 Sociedad para Asistencia Legal:

        Lcda. Wanda Tamara Castro Alemán

Materia: Derecho Probatorio – Admisibilidad de prueba de conducta específica sobre actos criminales en otro caso. (Regla 404(b) de las Reglas de Evidencia)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                  CC-2016-983     Certiorari

Danny Serrano Morales

    Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 4 de diciembre de 2018.

En esta ocasión, precisa que determinemos si, en virtud de la Regla 404(b) de las Reglas de Evidencia, 32 LPRA Ap. VI, es admisible prueba de conducta específica sobre actos criminales en otro caso, de los cuales el acusado resultó absuelto en los méritos, para los fines excepcionales reconocidos por la regla.

I

Por hechos presuntamente ocurridos el 24 de febrero de 2015, el Ministerio Público presentó denuncias en contra del Sr. Danny Serrano Morales (señor Serrano Morales) por infringir el

Art. 190(e) del Código Penal de 2012, 33 LPRA sec. 5260 (robo agravado), y el Art. 5.07 de la Ley de Armas, 25 LPRA sec. 458f (posesión o uso ilegal de armas largas semiautomáticas, automáticas o escopeta de cañón cortado).

Una vez se determinó causa probable para juicio, el Ministerio Público presentó las acusaciones por ambos delitos y alegó reincidencia simple, en vista de que el acusado había sido convicto por un delito grave anteriormente.

Luego de varios trámites procesales, incluyendo la supresión de la identificación realizada por el perjudicado en una rueda de confrontación, el Ministerio Público presentó una *Moción al amparo de la Regla 404(b) de las de Evidencia*. En ésta, solicitó al tribunal de instancia que, en virtud de la mencionada regla, admitiera como evidencia el testimonio de un testigo que fue víctima del delito de robo presuntamente cometido por el señor Serrano Morales media hora después de los hechos ocurridos en el caso de epígrafe, así como los testimonios del agente investigador y otro agente relacionado con la investigación de ese otro robo. Específicamente, los testimonios versarían sobre la misma manera (*modus operandi*) en que se realizaron ambos robos, ya que el alegado asaltante llegó en la misma guagua modelo Rodeo de color vino y estaba acompañado por otro individuo que conducía el vehículo, apuntó a ambas víctimas con un rifle color negro y verde (camuflaje) y en ambos robos el sujeto fue descrito como de tez trigueña y que

vestía una gorra de camuflaje, pantalón largo, camisa negra y un pañuelo en la cara.[1] De esa forma, el Ministerio Público arguyó que procedía la presentación de la referida prueba, esto con el propósito de, además de corroborar el testimonio del perjudicado, establecer en el presente caso la **identidad** del acusado mediante otros actos o delitos que presentan el mismo *modus operandi* y, a su vez, presentar evidencia de la elaboración de un **plan** por parte de éste.[2]

Durante una vista para atender la solicitud del Ministerio Público, la Defensa argumentó que la excepción que provee la Regla 404(b) de Evidencia, *supra*, no aplicaba a este caso, pues, a su entender, el Ministerio Público pretendía presentar una prueba de **otro caso que aún no había concluido** y en el cual al señor Serrano Morales le cobijaba la presunción de inocencia. Asimismo, la Defensa planteó que la prueba que el Ministerio Público interesaba presentar lo que procuraba era establecer propensión.

Evaluados los argumentos de las partes, el tribunal de instancia declaró "no ha lugar" la moción del Ministerio Público. En síntesis, concluyó que la prueba que el Ministerio Público pretendía presentar no constituía, al momento de la solicitud, prueba de conducta específica

---

[1] Véase *Moción al amparo de la Regla 404(b) de las de Evidencia*, Petición de *certiorari*, pág. 36.

[2] Íd., pág. 37.

atribuible al imputado que fuese admisible en virtud de la Regla 404(b) de Evidencia, *supra*.[3]

Inconforme con esa determinación, el Estado recurrió al Tribunal de Apelaciones arguyendo que el foro de instancia incidió en su determinación al denegar la solicitud del Ministerio Público por el fundamento de que no había concluido el otro proceso criminal en contra del señor Serrano Morales.

No obstante, el foro apelativo intermedio confirmó el dictamen recurrido.[4] En específico, manifestó lo siguiente:

> [N]o es procedente en Derecho presentar como prueba el alegado testimonio de un testigo de otro pleito judicial inconcluso, con el objetivo de pretender atribuir la "conducta específica" del [señor] Serrano Morales en el pleito presente, **cuando al momento de la presente Sentencia la comisión del alegado acto que se pretende presentar como conducta específica, no ha sido probada aún más allá de toda duda razonable.** (Énfasis en el original).

Como surge claramente de su dictamen, el Tribunal de Apelaciones determinó que el alegado acto que se pretendía presentar como conducta específica no era admisible porque aún no había sido probado más allá de duda razonable. Es decir, no se había probado con el *quantum* de prueba de un caso criminal.

---

[3] Esta determinación del tribunal de instancia fue recogida mediante una Minuta/Resolución de la vista celebrada el 19 de julio de 2016 y transcrita el 1 de agosto de 2016. Véase *Minuta/Resolución*, Apéndice de la Petición de *certiorari*, págs. 22-25.

[4] Una copia de la notificación de la Sentencia se archivó en autos el 14 de septiembre de 2016.

Insatisfecho, el Estado recurre ante nos con este único señalamiento:

> **Erró el Tribunal de Apelaciones al confirmar el dictamen del Tribunal de Primera Instancia y validar la denegatoria de la solicitud del Ministerio Público al amparo de la Regla 404(b) de Evidencia.**[5]

En su escrito, el Estado fundamentó su solicitud en dos casos resueltos por el Tribunal Supremo de Estados Unidos al interpretar la regla equivalente a nivel federal (Fed. R. Evid. 404(b)): Huddleston v. US, 485 US 681 (1988) y Dowling v. US, 493 US 342 (1990). A base de esos casos y la aplicación de la Regla 404(b) de Evidencia, *supra*, el Estado sostuvo que es admisible prueba de conducta específica cuando se presenta para establecer, entre otras cosas, oportunidad, plan e identidad. Asimismo, el Estado expresó que éstos serían usos legítimos reconocidos en nuestro ordenamiento. Así, esbozó que "[d]ado que en un contexto como éste no se está juzgando concretamente la culpabilidad del señor Serrano Morales por el otro robo que se le imputa, el Ministerio Público no tiene que establecer que -en efecto- el acto previo sucedió". (Énfasis omitido).[6] Ante lo cual enfatizó que la jurisprudencia federal lo que requiere para determinar si la prueba es admisible es que el juez examine si un jurado podría estimar razonablemente que la conducta en cuestión sí ocurrió. A su entender, esto

---

[5] Petición de *certiorari*, pág. 7.

[6] Íd., pág. 13.

es distinto al *quantum* de prueba requerido (más allá de duda razonable) para juzgar la culpabilidad del acusado por el otro delito imputado.  A su vez, indicó que como el *quantum* probatorio en cada instancia es distinto, entonces la determinación inicial al amparo de la Regla 404(b) de Evidencia, *supra*, no constituye impedimento colateral.[7]

Por su parte, la Defensa argumentó que existe una distinción entre la regla federal que hace referencia a prueba sobre actos criminales y la nuestra que utiliza el término "comisión de otros delitos".  En ese sentido, adujo que se puede interpretar que la regla federal no requiere una convicción previa de los hechos delictivos extrínsecos que se quieren presentar como prueba de conducta específica. Por el contrario, manifestó que nuestra regla, por su lenguaje, sí requiere la existencia de una convicción previa; es decir, que se haya demostrado la culpabilidad más allá de duda razonable.[8]  De ese modo, consideró que solo se debe admitir prueba cuando existe una convicción previa, ya que habría una determinación de culpabilidad en cuanto a la conexión del acusado con otro delito conforme al debido proceso de ley.

Expedido el recurso y pendiente de adjudicación en los méritos, la Defensa presentó una *Moción informativa urgente* mediante la cual nos informó que el juicio en su fondo por el segundo caso (que estaba pendiente al momento

---

[7] Véase Petición de *certiorari*, pág. 13.

[8] Alegato del recurrido, pág. 9.

de surgir la controversia del caso de epígrafe), ya había finalizado. A esos efectos, indicó que en dicho proceso, en el cual se imputó al acusado los mismos delitos que en el caso de epígrafe, el tribunal de instancia había declarado "no culpable" al señor Serrano Morales, por lo que resultó absuelto de los cargos allí imputados.[9]

Después de examinar las circunstancias particulares del caso ante nuestra consideración, la totalidad del expediente y el estado de Derecho aplicable, procedemos a resolver mediante los fundamentos que expondremos a continuación.

## II

Como nos menciona el profesor Ernesto L. Chiesa Aponte, existe un gran interés en que los hechos imputados en una demanda o acusación sean probados mediante evidencia sobre tales hechos y no sobre otra conducta de las partes distinta a los hechos imputados.[10] A esos efectos, añade el profesor Chiesa Aponte que la Regla 404(b) de Evidencia, *supra*, establece una regla de exclusión de evidencia de lo que constituye mala conducta distinta a la imputada (*uncharged misconduct*) cuando se presenta con el objetivo de inferir propensión a incurrir en este tipo de conducta y, por ende, inferir que el actor incurrió en la conducta

---

[9] Véase *Moción informativa urgente de 7 de febrero de 2017*. La Sentencia fue dictada el 3 de enero de 2017 y una copia de la notificación de la Sentencia se archivó en autos el 23 de enero de 2017.

[10] Véase E.L. Chiesa Aponte, Reglas de Evidencia Comentadas, San Juan, Ediciones Situm, 2016, pág. 95.

imputada.[11]  Específicamente, la Regla 404(b) de Evidencia,

*supra*, dispone lo siguiente:

> Evidencia de conducta específica, incluyendo la comisión de otros delitos, daño civil u **otros actos**, no es admisible para probar la propensión a incurrir en ese tipo de conducta y con el propósito de inferir que se actuó de conformidad con tal propensión.  Sin embargo, **evidencia de tal conducta es admisible** si es **pertinente para otros propósitos**, tales como prueba de **motivo, oportunidad, intención, preparación, plan, conocimiento, identidad, ausencia de error o accidente o para establecer o refutar una defensa.**
>
> Si la persona acusada lo solicita, el Ministerio Público deberá notificarle la naturaleza general de toda prueba que el Ministerio Público se proponga presentar bajo este inciso. La notificación deberá proveerse con suficiente antelación al juicio, pero el tribunal podrá permitir que la notificación se haga durante el juicio si el Ministerio Público demuestra justa causa para no haber provisto la información antes del juicio. (Énfasis suplido).

Como mencionamos, de la disposición antes citada surge

que la evidencia de **conducta específica relacionada a la**

**comisión de otros delitos, daño civil u otros actos** es

admisible cuando se ofrece con fines legítimos distintos a

establecer propensión.

Por otro lado, en repetidas ocasiones hemos resuelto

que cuando en Puerto Rico se adopta una norma tomada de otra

jurisdicción se adopta también la interpretación y el

alcance que se le ha dado en su lugar de origen.[12]  En este

---

[11] Chiesa Aponte, <u>Reglas de Evidencia Comentadas</u>, <u>op. cit.</u>, pág. 96.

[12] <u>U.P.R. v. Asoc. Pur. Profs. Universitarios</u>, 136 DPR 335, 369 (1994); <u>Pérez Maldonado v. J.R.T.</u>, 132 DPR 972, 981 (1993); <u>Peña Clos v. Cartagena Ortiz</u>, 114 DPR 576, 588 (1983); <u>Pueblo v. Reyes Bonilla</u>, 100

caso, nuestra regla es casi idéntica a la regla federal
(Fed. R. Evid. 404(b)), la cual dispone lo siguiente:

> (b) Crimes, Wrongs, or Other Acts.
>
> > (1) Prohibited Uses. Evidence of a crime, wrong,
> > or other act is not admissible to prove a
> > person's character in order to show that on a
> > particular occasion the person acted in
> > accordance with the character.
> >
> > (2) Permitted Uses; Notice in a Criminal Case.
> > This evidence may be admissible for another
> > purpose, such as proving motive, opportunity,
> > intent, preparation, plan, knowledge, identity,
> > absence of mistake, or lack of accident. On
> > request by a defendant in a criminal case, the
> > prosecutor must:
> >
> > > (A) provide reasonable notice of the general
> > > nature of any such evidence that the
> > > prosecutor intends to offer at trial; and
> > >
> > > (B) do so before trial--or during trial if the
> > > court, for good cause, excuses lack of
> > > pretrial notice.

En el ordenamiento federal, el Tribunal Supremo de
Estados Unidos ha tenido la oportunidad de interpretar el
alcance de la citada regla en contadas ocasiones.
Por consiguiente, procedemos a exponer lo resuelto por el
Alto Foro federal en relación con la controversia pendiente
ante nuestra consideración.

En Huddleston v. US, 485 US 681 (1988), el Tribunal
Supremo de Estados Unidos resolvió la referida controversia
al interpretar la Regla 404(b) federal. En ese caso,
Huddleston fue acusado por dos cargos, uno de venta de bienes

---

DPR 265, 269 (1971); Luce & Co. v. Junta Relaciones del Trabajo, 82 DPR
96, 98 esc. 2 (1961); Jiménez v. Jones, 74 DPR 260, 262-263 (1953);
Corretjer v. Tribl. de Distrito, 72 DPR 754, 760 (1951); Nieves v.
Jones, Jefe Interino Penitenciaría, 72 DPR 287, 290-291 (1951); Padilla
v. Vidal, 71 DPR 517, 520 (1950); Legarreta v. Tesorero de P.R., 55 DPR
22, 25 (1939); Vázquez v. Font, 53 DPR 265, 268 (1938); Díaz v. P.R.
Railway, Light & Power Co., 21 DPR 78 (1914).

robados y otro cargo de posesión de propiedad robada en el comercio interestatal. Ambos cargos se referían a dos partes de un cargamento de cintas de vídeo de la marca *Memorex* que Huddleston supuestamente poseía y vendía, sabiendo que habían sido robadas. No existía controversia de que las cintas vendidas por el acusado eran robadas, sino que la controversia se basaba en si el peticionario conocía ese hecho. El Tribunal de Distrito de Michigan permitió que el Estado presentara prueba de actos similares relacionados a Huddleston en virtud de la Regla 404(b) federal por entender que la referida prueba era relevante para demostrar el conocimiento del acusado de que las cintas eran robadas.

Por su parte en Huddleston, el Tribunal de Apelaciones para el Sexto Circuito confirmó la convicción al concluir que, a base de un estándar de preponderancia de la prueba, la evidencia admitida por el Tribunal de Distrito de Michigan sobre actos similares fue admitida para el propósito adecuado y su valor probatorio no sobrepasó el posible efecto perjudicial. A su vez, el Tribunal Supremo Federal confirmó ese dictamen y dispuso que, al evaluar prueba de conducta específica, **el juez estimará si un jurado podría razonablemente creer que tal conducta ocurrió.** En ese sentido, ni siquiera se requiere preponderancia de la prueba.[13] Ello pues, al determinar si la evidencia pasa al jurado, el juez **no aquilata credibilidad, sino que decide**

---

[13] Huddleston v. US, 485 US 681, 689 (1988).

**si un jurado podría razonablemente estimar que lo más probable tal conducta ocurrió.**[14]

Posteriormente, en Dowling v. US, 493 US 342 (1990), el más Alto Foro federal resolvió que aun cuando un acusado haya sido **absuelto** de una conducta, ello no constituye un impedimento constitucional para que se presente evidencia de esa conducta si ésta es pertinente para un fin legítimo bajo la Regla 404(b) federal. Este caso presentaba unos hechos similares al que se encuentra ante nuestra consideración. Allí, para probar la identidad del acusado por robo a un banco, se presentó evidencia de que posteriormente éste había asaltado a una señora con una máscara y un arma similares a los utilizados en el robo bancario imputado. Al igual que en el presente caso, en *Dowling* el acusado había sido absuelto en el caso en el cual le imputaron el asalto a la señora y, aún así, el Tribunal Supremo de Estados Unidos concluyó que la evidencia de la conducta anterior era admisible, pues la absolución solo implicaba que no se cumplió con el *quantum* de prueba más allá de duda razonable para probar el delito, aspecto que no es pertinente bajo la Regla 404(b) federal.[15] A esos efectos, el Tribunal Supremo federal dispuso lo siguiente:

> For present purposes, we assume for the sake of argument that Dowling's acquittal established that there was a reasonable doubt as to whether Dowling was the masked man who entered Vena Henry's home with Delroy Christian two weeks after the First Pennsylvania Bank robbery.[2] But to introduce

---

[14] Huddleston v. US, supra.

[15] Dowling v. US, 493 US 342, 348-349 (1990).

> evidence on this point at the bank robbery trial, the Government did not have to demonstrate that Dowling was the man who entered the home beyond a reasonable doubt: the Government sought to introduce Henry's testimony under Rule 404(b), and, as mentioned earlier, in *Huddleston v. United States, supra,* 485 U.S., at 689, 108 S.Ct., at 1501, we held that "[i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." Because a jury might reasonably conclude that Dowling was the masked man who entered Henry's home, even if it did not believe beyond a reasonable doubt that Dowling committed the crimes charged at the first trial, the collateral-estoppel component of the Double Jeopardy Clause is inapposite.[16]

En este contexto, queda claro que el Tribunal Supremo de Estados Unidos ha establecido en reiteradas ocasiones que para determinar si se puede presentar evidencia de conducta específica, incluyendo la comisión de otros delitos, daño civil u otros actos, lo necesario es que el juez determine si un jurado razonable podría creer que tal conducta ocurrió. Por entender que el asunto ciertamente es uno de credibilidad que debe ser determinado en última instancia por el jurado, adoptamos también esa regla en nuestra jurisdicción.

Por otro lado, la Regla 403 de las Reglas de Evidencia, 32 LPRA Ap. VI, establece lo siguiente en relación con la exclusión de evidencia:

> Evidencia pertinente puede ser excluida cuando su valor probatorio queda sustancialmente superado por cualesquiera de estos factores:
> a) Riesgo de causar perjuicio indebido.
> b) Riesgo de causar confusión.
> c) Riesgo de causar desorientación del Jurado.
> d) Dilación indebida de los procedimientos.
> e) Innecesaria presentación de prueba acumulativa.

---

[16] Dowling v. US, supra.

Es preciso destacar que esta regla 403 debe ser utilizada con prudencia y cuidado por los tribunales, pues nuestra Regla 402 de las Reglas de Evidencia, 32 LPRA Ap. VI, establece un principio fundamental de que toda evidencia pertinente es admisible, salvo que sea aplicable una regla de exclusión.[17]

Este análisis debe tener como eje central que el juez determine, a su juicio y criterio, si la admisibilidad de esa prueba puede llegar a ser perjudicial para el jurado. Es decir, debe determinar si el perjuicio que puede llegar a causar en el jurado es mayor que el valor probatorio de la prueba que se pretende utilizar.[18] En caso de resolver en la afirmativa y entender que esa evidencia podría potencialmente causar un mayor perjuicio que algún tipo de beneficio en el jurado, el juez debería llegar a la conclusión de que la prueba no debe ser admisible por su posible efecto. En este contexto aplica la deferencia y sana discreción que se le reconoce al juez que tiene ante sí los hechos del caso y que conoce a ese jurado que tiene ante su presencia. Por lo cual, éste debe reconocer el nivel de perjuicio que podría tener la prueba de ser presentada ante el jurado.

En conclusión, es claro que evidencia admisible de conducta específica **no** se limita, según el texto de la Regla

---

[17] Véase E.L. Chiesa Aponte, Reglas de Evidencia de Puerto Rico de 2009, San Juan, Pubs. JTS, 2009, pág. 116.

[18] Íd., pág. 117.

404(b) de Evidencia, *supra*, a actos que hayan producido una convicción criminal.

Es importante entender que, contrario a lo intimado por el señor Serrano Morales, la salvaguarda o protección en favor del acusado que establece la Regla 404(b) de Evidencia, *supra*, no se relaciona con el **tipo de acto**, sino con el **propósito** para el cual el Estado pretende presentarlo. Así, al aludir a "comisión de otros delitos", la regla no está estableciendo un requisito con el que tiene que cumplir el Estado si pretende presentar determinado acto o conducta específica. Por el contrario, la regla lo que hace es abrir la oportunidad al Estado, en contra de los intereses del acusado, de que se pueda presentar en su contra actos específicos, aunque sean convicciones previas. Esto, siempre y cuando tal prueba sea pertinente a los propósitos que como excepción establece la propia Regla, y que el valor probatorio del acto o conducta específica que se pretende presentar como evidencia supere o sobrepase cualquier otro efecto perjudicial. De cumplirse con lo anterior, la conducta específica, aun cuando sea una convicción anterior es admisible y no aplica la doctrina de impedimento colateral de la Cláusula de Doble Exposición.[19]

Además, es incorrecta la contención del señor Serrano Morales con relación a que la expresión "comisión de otros delitos" que surge del texto de la Regla 404(B) local

---

[19] Dowling v. US, supra, pág. 349.

significa que se requiere para su aplicación la existencia de una convicción previa por parte del acusado contra quien se trae el acto como conducta específica. El Informe de las Reglas de Derecho Probatorio del Comité Asesor Permanente de Reglas de Evidencia de marzo de 2007 señala que "[l]a conducta no imputada no tiene que ser constitutiva de delito: puede ser mala conducta no delictiva".[20] Asimismo, el profesor Chiesa Aponte señala lo siguiente:

> La Regla 20 (B) se refiere a "otros delitos, daño civil u otros actos"; la regla federal se refiere a "other crimes, wrongs or acts". Se trata de "misconduct", difícil de traducir al español con una sola palabra. Se trata de conducta mala, negativa, que arroja sombra sobre la moral o virtud del actor. También se habla de "prior misdeeds". En aras de la brevedad, usaré la expresión "conducta no imputada" para referirme a la evidencia de conducta específica permisible bajo la Regla 20 (B).
>
> En primer lugar, la conducta no imputada no tiene que ser constitutiva de delito. Puede ser mala conducta no delictiva de suyo, como mentir, jugar lotería (apostar). Si se imputa homicidio a la acusada por haber dado muerte [a] su esposo, el fiscal, bajo la Regla 20 (B), podría presentar evidencia de relaciones amorosas de la víctima con otra mujer, para establecer motivo, aunque ese tipo de relaciones no constituya delito. Si se tratara de adulterio, la evidencia sería admisible independientemente de que el adulterio estuviera o no tipificado como delito.
>
> Consideremos el caso usual, en donde la evidencia ofrecida bajo la Regla 20 (B) es constitutiva de delito. El proponente debe presentar evidencia de que se incurrió en la conducta específica, y no debe ser suficiente

---

[20] Informe de las Reglas de Derecho Probatorio, Secretariado de la Conferencia Judicial y Notarial, marzo de 2007, pág. 150.

> evidencia de arresto, denuncia o acusación. Pero tampoco puede decirse que el hecho de que no se presentara acusación, o que se archivara el caso, es impedimento para traer evidencia de la conducta bajo la Regla 20 (B). Aún más, ni siquiera la absolución por la conducta criminal tiene efecto de impedimento para el uso de la evidencia de la conducta bajo la Regla 20 (B). Así lo resolvió la Corte Suprema en *Dowling v. United States*.[21]

## III

Analicemos los hechos que nos ocupan, a la luz de las normas de Derecho antes reseñadas. En el caso ante nuestra consideración, el Ministerio Público solicitó al tribunal de instancia que, de acuerdo con la Regla 404(b) de Evidencia, *supra*, admitiera como evidencia el testimonio de una persona que fue víctima del delito de robo supuestamente cometido por el señor Serrano Morales media hora después de los hechos ocurridos en el caso de epígrafe, así como los testimonios del agente investigador y otro agente relacionado con la investigación de ese otro robo. Posteriormente, expedido el recurso y pendiente de resolución ante esta Curia, la Defensa nos notificó que el juicio en su fondo por el segundo caso ya había finalizado y que el señor Serrano Morales resultó absuelto en los méritos de todos los cargos presentados en su contra.[22]

Retomando el error señalado por el Estado, en el cual considera que el Tribunal de Apelaciones erró al confirmar

---

[21] E.L. Chiesa Aponte, Tratado de Derecho Probatorio, Pubs. JTS, 1999, Vol. I, Sec. 2.4, págs. 82-83.

[22] *Moción informativa urgente de 7 de febrero de 2017*, págs. 1-3.

el dictamen del foro de instancia y validar la denegatoria de la solicitud del Ministerio Público al amparo de la Regla 404(b) de Evidencia, *supra*, entendemos que le asiste la razón.

Anteriormente repasamos las expresiones y determinaciones del Tribunal Supremo federal en cuanto a este asunto de admisibilidad de la prueba, toda vez que las reglas son prácticamente idénticas.

El asunto deberá volver ante la consideración del foro de instancia, el cual una vez evalúe la prueba de conducta específica que pretende presentar el Ministerio Público, entonces determinará si un jurado podría razonablemente creer que la conducta ocurrió.[23] Además, en esa evaluación, el tribunal de instancia deberá determinar si en efecto la prueba presentada posee un valor probatorio mayor al perjuicio que pudiese causar en el jurado.[24]

IV

Por los fundamentos antes expuestos, revocamos la decisión emitida por el Tribunal de Apelaciones y devolvemos el caso al foro de instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[23] Huddleston v. US, *supra.*

[24] Chiesa Aponte, Reglas de Evidencia de Puerto Rico de 2009, op. cit., pág. 117.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        v.                  CC-2016-983      Certiorari

Danny Serrano Morales

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 4 de diciembre de 2018.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, revocamos la decisión emitida por el Tribunal de Apelaciones y devolvemos el caso al foro de instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió Opinión concurrente a la cual se unió el Juez Asociado señor Colón Pérez. La Jueza Presidenta Oronoz Rodríguez se unió a esta Opinión concurrente, excepto a lo expresado en el acápite III-B. El Juez Asociado señor Estrella Martínez emitió Opinión de conformidad en parte y disidente en parte.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Danny Serrano Morales<br><br>Recurrido | **Núm.** CC-2016-0983 | |

Opinión concurrente emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se une el Juez Asociado señor Colón Pérez. La Jueza Presidenta Oronoz Rodríguez se une en parte.[25]

San Juan, Puerto Rico, a 4 de diciembre de 2018.

Concurro con la determinación de la mayoría de adoptar en nuestra jurisdicción la normativa desarrollada a nivel federal para evaluar la admisibilidad de prueba presentada al amparo de la Regla 404(B) de las Reglas de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 404(B). Pero sólo puedo concurrir. La mayoría ha desaprovechado la oportunidad que la controversia en este caso brindaba para formular y enunciar un método racional de adjudicación en aquellas instancias en las cuales nos propongamos adoptar una normativa jurídica previamente pautada por el Tribunal Supremo de Estados Unidos. Estimo que el método más certero y eficaz para adjudicar este tipo de controversia es aquel que no es meramente declarativo, sino que, además, tiene el efecto de impartir seguridad, confiabilidad y certidumbre al proceso mismo de adjudicación mediante un análisis ponderado de los fundamentos que sustentan cualquier conclusión. A fin

---

[25] La Jueza Presidenta Oronoz Rodríguez se une a esta Opinión Concurrente, excepto a lo expresado en el acápite III-B.

de cuentas, en nuestra jurisdicción, "donde compiten diversos sistemas de ley y maneras de entender la ley", es imprescindible que seamos conscientes de lo anterior. J. Trías Monge, *Teoría de Adjudicación*, (Editorial UPR, 2000), en la pág. 3.

Esto responde al llamado que nos hiciese el Comité Asesor Permanente de las Reglas de Evidencia en su *Informe de las Reglas de Derecho Probatorio* preparado en marzo de 2007, cuando nos propuso, como principio de hermenéutica estatutaria, que: "no se adoptarán **indiscriminadamente** conceptos del derecho probatorio federal sin atemperarlos a la realidad forense puertorriqueña". *Informe de las Reglas de Derecho Probatorio*, Comité Asesor Permanente de las Reglas de Evidencia (marzo, 2007), en la pág. 3 (énfasis suplido) (en adelante, *Informe de las Reglas*).

Si bien es cierto que nuestra Regla 404(B) "es casi idéntica" a su contraparte federal, el análisis no puede culminar ahí. Le corresponde a este Tribunal, como máximo intérprete de las leyes en nuestro País, esbozar los fundamentos por las cuales procede, en derecho, adoptar un estándar proveniente de otra jurisdicción. Máxime cuando la Opinión mayoritaria constituye la **primera ocasión** que este Tribunal se expresa sobre el alcance de la Regla 404(B), anterior Regla 20(B), de las Reglas de Evidencia de 1979. Una discusión cabal de la trascendencia de esta regla de evidencia, cuya homóloga federal ha sido probablemente la

regla de evidencia más litigada ante los tribunales estadounidenses, despejaría cualquier duda sobre cómo aplicar la normativa federal que hoy acogemos.[26]

Para lograr este acometido, en primer lugar, corresponde detallar la amplia discusión teórica y práctica esbozada en las últimas décadas, por un sinnúmero de tratadistas puertorriqueños y estadounidenses, en torno al alcance de la regla en cuestión y su análoga federal. De otra parte, resulta imperativo, como un ejercicio coherente de derecho comparado, considerar aquellas determinaciones de los tribunales supremos estatales que han atendido controversias similares a la del caso de epígrafe y sus fundamentos para adoptar o rechazar la normativa federal. En atención a todo esto, expongo a continuación las razones por las cuales estoy de acuerdo con el dictamen de una mayoría, más no así con los fundamentos expuestos en la Opinión que hoy se certifica.

**I.**

---

[26] Véase Charles A. Wright & Michael H. Graham, *Federal Practice and Procedure*, sec. 5242 (Thomas Reuters, 2007) ("Judges, trial and appellate, face question of the application of the rules on the admissibility of uncharged misconduct **more frequently than most other evidence rules.**")(énfasis suplido). De hecho, comentan Wright y Graham que hace setenta (70) años, el reconocido tratadista de Derecho Probatorio, Charles T. McCormick sostuvo que "the cases were as numerous **'as the sands of the sea.'** As any reader who has waded through the digest will agree, the situation has only gotten worse." *Id.* en la sec. 5243, n. 2 (énfasis suplido).

En lo pertinente a la controversia ante nuestra consideración, se deben puntualizar varios asuntos fácticos y del trámite procesal.

Tras encontrarse causa probable para juicio por los delitos de robo agravado y posesión ilegal de un arma larga contra el Sr. Danny Morales Serrano (recurrido), y llevarse a cabo las gestiones de rigor correspondientes, el Ministerio Público presentó una moción al amparo de la Regla 404(B) de las Reglas de Evidencia de Puerto Rico. Esto, con el propósito de presentar prueba para establecer la **identidad** del acusado por otros actos o delitos y, a su vez, presentar la elaboración de un **plan** por parte de éste. Según alegó el Ministerio Público, el señor Serrano Morales cometió un segundo robo media hora más tarde de los hechos que dieron lugar a la presente acusación y que, conforme a los testimonios de varios agentes del orden público, se llevó a cabo de la misma forma (*modus operandi*).[27] El señor Serrano Morales también fue acusado, en un procedimiento separado, por los hechos suscitados en ese segundo incidente. La Defensa se opuso a la solicitud por entender que no aplicaba

---

[27] Los testimonios que el Ministerio Público desea admitir en evidencia versarían sobre la forma en que se llevaron a cabo los robos. Según alega el Estado, en **ambas** instancias el presunto asaltante llegó en una guagua, marca Isuzu modelo Rodeo color vino, acompañado por otro individuo que conducía el vehículo, que apuntó a las víctimas con un rifle color negro y verde (estilo camuflaje) y que el sujeto fue descrito como uno de tez trigueña vestido con una gorra estilo camuflaje pantalón largo, camisa negra y con un pañuelo cubriendo el rostro.

la Regla 404(B) de Evidencia, dado que el Ministerio Público pretendía presentar prueba de un procedimiento criminal que aún no había concluido y en el cual al señor Serrano Morales le cobijaba una presunción de inocencia.

El Tribunal de Primera Instancia, luego de evaluar los argumentos de las partes, declaró *no ha lugar* la moción presentada por el Ministerio Público. Según la *Minuta y Resolución*, el foro primario sostuvo que, "[e]n cuanto a la 'comisión de otros delitos', la regla [404(B)] se refiere a la 'comisión', no la 'imputación' de otros delitos". *Minuta y Resolución de 19 de julio de 2016*, en la pág. 2. Para el Tribunal de Primera Instancia, "aceptar" dicha prueba tendría el efecto de resolver "el asunto y la cuestión última que le corresponde resolver a otra sala". *Id.* Señaló, además, que "[d]iferente sería el caso si existiera una condena, si hubiese recaído una sentencia de culpabilidad". *Id.* Así las cosas, el foro primario concluyó que, "la prueba que se pretende traer al amparo de la Regla 404(B) de las Reglas de Evidencia[,]en este momento[,] no constituye 'conducta específica' atribuible a la persona contra la cual se pretende traer". *Id.* en la pág. 3.

Inconforme, el Ministerio Público recurrió al Tribunal de Apelaciones mediante un recurso de *certiorari*. Dicho foro confirmó el dictamen recurrido y resolvió que la Regla 404(B) resultaba clara en cuanto a "su ilustración de lo que constituye 'conducta específica', cuando apunta a la *comisión*

de otros delitos, la *comisión* de un daño civil, o la *comisión* de otros actos". *Sentencia del Tribunal de Apelaciones del 13 de noviembre de 2016*, en la pág. 4 (énfasis en original). Anclado en esto, el foro apelativo intermedio sostuvo que para que "proceda en Derecho la admisión como evidencia en juicio de la conducta específica de un individuo, debe la misma . . . ser un acto probado más allá de toda duda razonable". *Id.* Así la cosas, el Tribunal de Apelaciones concluyó que:

> [L]a improcedencia en Derecho de la solicitud del Ministerio Público estriba en el principio cardinal de que tanto en el pleito de epígrafe, como en cualquier otro pleito criminal pendiente aún de concluir donde el aquí recurrido comparezca como parte acusada, a éste se le presume inocente hasta que lo contrario sea demostrado mediante evidencia que así lo pruebe más allá de toda duda razonable, esto es, conforme al quantum de prueba requerido por nuestro ordenamiento.

*Id.* en la pág. 5.

Aún insatisfecho, el Estado acudió ante este foro mediante una petición de *certiorari* y expuso que, conforme a lo resuelto en *Huddleston v. US*, 485 US 681 (1988) y *Dowling v. US*, 493 US 342 (1990), la prueba presentada debía ser admitida en evidencia. En específico, arguyó que, según dicha jurisprudencia federal, sólo correspondía al juzgador determinar si un jurado razonable podría concluir que la conducta ocurrió. Es decir, el *quantum* de prueba era uno sustancialmente menor al de más allá de duda razonable requerido en un proceso criminal ordinario. En oposición a ello, la Defensa argumentó en su alegato que el lenguaje de

la Regla 404(B) de las Reglas de Evidencia de Puerto Rico requiere, a diferencia de la regla federal, que exista una convicción previa para presentar cierta prueba de conducta específica.

Conviene señalar que una vez expedido el recurso, la Defensa presentó una *Moción Informativa urgente* en la que informó que el juicio en su fondo por el segundo caso de robo había culminado y que el señor Serrano Morales había sido declarado "no culpable" y, por ende, resultó **absuelto** de los cargos imputados (mismos delitos del presente caso). El Ministerio Público no presentó una moción en oposición a la moción informativa de la Defensa.

Con el beneficio de la comparecencia de las partes, procedo a exponer mis fundamentos para disponer de la controversia en el caso de epígrafe.

## II.

Para dilucidar esta controversia es necesario detallar el estado de Derecho en Puerto Rico sobre la presentación de prueba en un procedimiento judicial dirigida a establecer el carácter de una persona. En específico, conviene trazar la trayectoria de la Regla 404(B) de Evidencia, anterior Regla 20(B), en nuestro ordenamiento jurídico, así como su contraparte federal y la jurisprudencia aplicable en dicha esfera y otras jurisdicciones estatales estadounidenses. Veamos.

## A.

El objetivo del cuerpo normativo que regula la admisibilidad de prueba en todos los procedimientos judiciales en Puerto Rico es la búsqueda de la verdad. Regla 102, Reglas de Evidencia de Puerto Rico, 32 LPRA Ap. VI, R. 102. Cónsono con este principio, la prueba que se pretende admitir en dichos procedimientos tiene que ser **pertinente**; es decir, que arroje luz o tenga algún valor probatorio para adjudicar la causa de acción involucrada. Véase E. L. Chiesa Aponte, *Reglas de Evidencia Comentadas* (Edición Situm, 2016) en las págs. 72-73. Sin embargo, en nuestro ordenamiento probatorio existen reglas de exclusión, y normas de discrecionalidad judicial, que permiten **excluir** cierta prueba pertinente fundadas en la búsqueda de la verdad o por razones de política pública que son necesarias para el mejor funcionamiento de un sistema democrático de justicia. Esto se extiende a ciertas exclusiones de rango constitucional.

Una de las reglas de exclusión más importante en el derecho probatorio puertorriqueño se encuentra contenida en las Reglas 404 y 405, en relación con el uso de evidencia sobre el carácter de una persona o relativa a una conducta distinta a la imputada a ésta, y que, a su vez, se trae como prueba circunstancial de la conducta imputada inicialmente. Véase E.L. Chiesa Aponte, *Tratado de Derecho Probatorio*, Vol. I, Sec. 2.4, en la pág. 76 (Publicaciones JTS, 1999); véase además, E.L. Chiesa Aponte, *Evidencia de carácter y de conducta no imputada*, 66 Rev. Jur. UPR 41, 83 (1996) (en

adelante, Chiesa Aponte, *Evidencia de carácter*). Una conducta anterior, por ejemplo, sobre la agresividad de una persona podría tener un alto valor probatorio y ser pertinente para la controversia civil o penal en la cual se presenta. No obstante, existen consideraciones más allá de la pertinencia -extrínsecas a la búsqueda de la verdad- como sería **evitar** que un juzgador adjudique una controversia a base del carácter o una "conducta no imputada", anterior o posterior a los hechos ante su consideración.[28]

A la luz de estos principios básicos en materia de derecho probatorio, corresponde enmarcar el alcance de la Regla 404(B). Ésta establece que:

> Evidencia de conducta específica, incluyendo la comisión de otros delitos, daño civil u otros actos, no es admisible para probar propensión a incurrir en ese tipo de conducta y con el propósito de inferir que se actuó de conformidad con tal propensión. Sim embargo, evidencia de tal conducta es admisible si es pertinente para otros propósitos, tales como prueba de motivo, oportunidad, intención, preparación, plan, conocimiento, identidad, ausencia de error o accidente o para establecer o refutar una defensa
>
> Si la persona acusada lo solicita, el Ministerio Público deberá notificarle la naturaleza general de toda prueba que el Ministerio Público se proponga presentar bajo este inciso (B). La notificación deberá proveerse con suficiente antelación al juicio, pero el Tribunal podrá permitir que la notificación se haga durante el juicio si el Ministerio Público demuestra justa

---

[28] Conviene recordar que, en un procedimiento criminal, esto adquiere mayor importancia en los casos en que el juicio se celebra frente a un jurado. Éstos últimos tienen el deber de evaluar si la persona que enfrenta un proceso penal cometió el delito imputado, a base **exclusivamente** de la prueba admitida, por los hechos específicos que dieron lugar a la acusación y no por actuaciones pasadas.

causa para no haber provisto la información antes del juicio.

Regla 404(B), *supra*.

Con excepción del segundo párrafo, el cual fue añadido para "reducir el elemento sorpresa y promover la resolución temprana sobre la cuestión de admisibilidad de dicha evidencia", la regla permaneció inalterada con la aprobación de las Reglas de Evidencia de 2009. *Informe de las Reglas*, *supra*, en la pág. 149.[29]

La Regla federal 404(b), equivalente a la nuestra, dispone que:

> (b) Crimes, Wrongs, or Other Acts.
> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
> (B) do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404.

Como se desprende de la regla federal, aunque contiene ciertas diferencias por un asunto de la traducción al

---

[29] Por razón de esto, estimo que cualquier discusión teórica propuesta por los tratadistas puertorriqueños en torno a la entonces Regla 20(B) tiene el **mismo valor persuasivo** para definir el alcance de la actual Regla 404(B).

español, ésta es prácticamente idéntica. Chiesa Aponte, *Tratado de derecho probatorio*, *supra*, en las págs. 82-83; Chiesa Aponte, *Evidencia de carácter*, *supra*, en la pág. 86. Recurrir a las Reglas de Evidencia Federal, como parte de un ejercicio consciente de derecho comparado, resulta imperativo dado que, como se señaló el *Informe de las Reglas de Derecho Probatorio*, se reconoce, junto al Código de Evidencia de California, "su marcada influencia en las Reglas de Evidencia de 1979 y en el desarrollo de nuestra jurisprudencia. Además, tienen **el beneficio de estudios exhaustivos, tratados y una diversidad de jurisprudencia** que las ha interpretado y que sirven de orientación y guía en el estudio del derecho". *Informe de las Reglas*, *supra*, en la pág. 3 (énfasis suplido). Esto, siempre y cuando, como se dijo anteriormente, no desemboque en la adopción indiscriminada de conceptos del Derecho Probatorio federal. *Id.*

Ahora bien, según surge de los textos de las reglas precitadas, ambas establecen una **prohibición** expresa en relación con la admisibilidad de evidencia de conducta específica que se presente para propósitos de establecer la **propensión** de esa persona (sea demandante, demandado, acusado o víctima) de **incurrir** en ese tipo de acto o conducta; es decir, usar una "conducta no imputada" como evidencia circunstancial para establecer la conducta imputada,

contenida en las alegaciones de una demanda civil o en los elementos del delito de la acusación.[30]

A pesar de la prohibición en torno a la admisibilidad de evidencia de carácter específico para establecer propensión, la Regla **permite** que cierta "conducta no imputada" se analice **fuera** del contexto de una regla de exclusión ya que se podría traer para otros fines. En específico, para presentar prueba circunstancial que acredite un aspecto **independiente** pero **pertinente** de dicha conducta específica, como sería el motivo, la oportunidad, intención, preparación, plan, conocimiento, identidad o ausencia de error o accidente, entre otros no enumerados. R. 404 (B), *supra*.[31] El profesor Chiesa Aponte reconoce que es "tanta la evidencia que puede resultar admisible bajo esta cláusula, que la regla puede bien ser concebida como una de inclusión más que de exclusión". Chiesa Aponte, *Evidencia de carácter*, *supra*, en la pág. 85.

Para contextualizar esta llamada "regla de inclusión" se debe aclarar **cuál es la naturaleza** de una "conducta o acto no imputado". En la esfera federal, el reconocido tratadista

---

[30] Otra forma de considerar el efecto adverso de permitir este tipo de acto o conducta surge mediante el proceso inferencial propio de la admisibilidad de prueba circunstancial; ya que con esta prohibición la regla busca excluir el uso circunstancial de la prueba de carácter. Véase E. Vélez Rodríguez, *Evidencia de la comisión de otros actos-Regla 20 (B): breve análisis de la determinación de admisibilidad*, 34 Rev. Jurídica Inter. P.R. 309, 312 (2000).
[31] Esta enumeración es una ejemplificativa y no taxativa o cerrada. Chiesa Aponte, *Evidencia de carácter*, *supra*, en la pág. 85.

Edward J. Imwinkelried acuñó el término "uncharged misconduct" para describir aquella conducta o acto específico inadmisible para propósitos de establecer propensión.[32] De otra parte, según el *Diccionario Jurídico: inglés-español, español-inglés* publicado por Steven M. Kaplan la palabra "misconduct" se define como: "mala conducta, comportamiento ilícito, incumplimiento de deberes de un cargo". Steven M. Kaplan, *Diccionario Jurídico: inglés-español, español-inglés* 199 (2nda Ed., Aspen Publishers, 2001).

El profesor Chiesa Aponte reconoce que la palabra "misconduct" resulta difícil de traducir al español en una sola palabra, pues se refiere a "conducta mala, negativa, que arroja sombra sobre la moral o virtud del actor". Chiesa Aponte, *Tratado de Derecho Probatorio*, *supra*, en la pág. 83; Chiesa Aponte, *Evidencia de carácter*, *supra*, en la pág. 89. El Profesor también explica que a este acto o conducta específica se le ha catalogado como un "prior misdeeds". *Id.* en la pág. 90. Ante las distintas definiciones presentadas, el profesor Chiesa Aponte opta por utilizar la frase "mala conducta" o simplemente "conducta no imputada" para catalogarla.[33] Coincido con el Profesor y estimo que ambas

---

[32] Desde 1984, Imwinkelried ha publicado un tratado, en dos volúmenes, titulado *Uncharged Misconduct Evidence* por la publicación de West Group (y antes por Callaghan & Company); es de ahí que surge el término. En estos tratados ha estudiado en gran detalle el impacto de la Regla federal 404(b) y sus respectivas contrapartes estatales.
[33] El profesor Emmanuelli Jiménez se refiere a la "conducta no imputada" de la misma forma. Véase R. Emmanuelli Jiménez,

frases se pueden utilizar de forma intercambiable. Ahora bien, ¿qué, en efecto, se puede considerar como una "mala conducta" en el contexto de la Regla 404(B), más allá de su mera traducción al español?

La Regla dispone específicamente que, para propósitos de probar propensión, no será admisible prueba de conducta específica "incluyendo la comisión de otros delitos, daño civil u otros actos". Regla 404(B), *supra*. El profesor Chiesa Aponte sostiene que, tanto en el contexto civil como en el penal, "la conducta no imputada **no tiene que ser constitutiva de delito**. Puede ser mala conducta no delictiva de suyo, como mentir". Chiesa Aponte, *Tratado de Derecho Probatorio*, *supra*, en la pág. 83; Chiesa Aponte, *Evidencia de conducta*, *supra*, en la pág. 90 (énfasis suplido).[34] El Informe del Comité Asesor Permanente de las Reglas de Evidencia coincide con esta explicación. Véase *Informe de las Reglas*, *supra*, en la pág. 150. De hecho, la propia Regla establece que pueden ser "otros actos" distintos a aquellos que estén tipificados como

---

*Prontuario de Derecho Probatorio Puertorriqueño*, (4ta ed., Ed. Situm 2015).

[34] Para explicar, por ejemplo, cómo se podría presentar evidencia en el contexto de una mentira, el profesor Chiesa Aponte presenta la situación en la que se acusa a una mujer de asesinato por haber dado muerte a su esposo y en el procedimiento en su contra, el fiscal presenta evidencia de relaciones amorosas de la víctima con otra persona para establecer "motivo", conforme a la ahora Regla 404(B), aunque esa presunta relación "adúltera" no estuviese tipificada como delito. Chiesa Aponte, *Tratado de derecho probatorio*, *supra*, en la pág. 83.

delitos en el Código Penal o que constituyan un acto negligente en el supuesto de un daño civil.

En la situación en que la "mala conducta" sea constitutiva de un delito, el profesor Chiesa Aponte -al evaluar decisiones de distintos foros federales interpretando la regla federal 404(b)- sostiene que el proponente "debe presentar evidencia de que **se incurrió** en la conducta específica, y no debe ser suficiente la evidencia de arresto, denuncia o acusación". Chiesa Aponte, *Tratado de derecho probatorio*, *supra*, en la pág. 83; Chiesa Aponte, *Evidencia de conducta*, *supra*, en la pág. 90. Sin embargo, esto no implica que sea necesario probar dicha conducta específica mediante una sentencia condenatoria dado que, incluso cuando "no se presentara acusación, o que se archivara el caso, [esto no constituye] impedimento para traer evidencia de la conducta". *Id.* De hecho, "ni [siquiera] la absolución por la conducta criminal tiene efecto de impedimento para el uso de la evidencia de conducta". *Id.*[35] Como surge de estas explicaciones, la evidencia sobre qué podría considerar "mala conducta" resulta muy amplia; claro, en tanto y cuanto, no se traiga para probar propensión.

Ahora bien, para pasar juicio sobre si se incurrió en la "mala conducta" que se pretende presentar como evidencia, es decir, para dilucidar su admisibilidad para otros

---

[35] Esto, precisamente, fue lo que sucedió en la decisión de *Dowling*, la cual se discutirá a fondo en el Acápite III.

**propósitos pertinentes** distintos a establecer propensión, el Tribunal Supremo de Estados Unidos desarrolló un estándar adjudicativo particular. Veamos.

**B.**

En *Huddleston*, el Gobierno federal acusó al Sr. Guy Rufus Huddleston de poseer y vender videocintas "con conocimiento" de que éstas eran hurtadas. Durante el juicio celebrado ante el Tribunal de Estados Unidos para el Distrito de Michigan, el juez permitió que la fiscalía federal presentara prueba de conducta específica, bajo la Regla federal 404(b), para el propósito de establecer que el acusado anteriormente había participado de la venta de enseres y televisores hurtados provenientes, presuntamente, de la misma fuente que le vendió las videocintas. El Tribunal de Distrito admitió la evidencia por entender que la misma era pertinente, no para establecer propensión, sino para probar el elemento subjetivo (*mens rea*) de que el señor Huddleston poseyó y distribuyó las cintas "con conocimiento" de que éstas habían sido hurtadas.

Así las cosas, un jurado encontró culpable al acusado por el cargo imputado de posesión de las videocintas. El Tribunal de Apelaciones de Estados Unidos para el Sexto Circuito confirmó la convicción y sostuvo que, para evaluar la pertinencia de dicha evidencia, correspondía probar por preponderancia de la prueba que el acusado había cometido la presunta "mala conducta" que se le imputaba. En una Opinión

unánime, emitida por el entonces Juez Presidente Rehnquist, el máximo foro federal confirmó la convicción del señor Huddleston y, a su vez, aclaró el estándar adjudicativo, en específico el *quantum* de prueba, aplicable para considerar prueba presentada bajo la Regla federal 404(b).

El Tribunal Supremo de Estados Unidos resolvió que, para analizar la admisibilidad de una conducta específica, considerada "mala conducta", debe considerarse, primero, su **pertinencia**. Esto implica evaluar si un jurado podría **razonablemente concluir** que tal conducta ocurrió y que el acusado fue quién la llevó a cabo.[36] Paso seguido, el máximo foro federal sostuvo que este análisis es uno sobre **pertinencia condicionada** (sujeta a satisfacer una condición de hecho), según los parámetros de la Regla federal 104(b). *Huddleston*, 485 US en la pág. 690.[37] En otras palabras, al considerar prueba presentada bajo la Regla federal 404(b), no se evalúa la **credibilidad** de la condición de hecho ni se realiza una **determinación preliminar** sobre si se estableció la condición de hecho necesaria para su admisibilidad. Al fin de cuentas, la función del tribunal es asegurarse de que

---

[36] "In Rule 404(b) context, similar act evidence is relevant only of the jury can reasonably conclude that the act occurred, and that the defendant was the actor". *Huddleston*, 485 US en la pág. 689.

[37] Dicha regla federal, equivalente a nuestra Regla 109(B), requiere que cuando se ofrece evidencia que, a su vez, **depende** de que se satisfaga una **condición de hecho**, ésta última sólo será admisible si se presenta **prueba suficiente** que sostenga la conclusión de que, en efecto, la condición de hecho fue satisfecha.

exista **prueba suficiente** para que un jurado pueda en su momento concluir, a base de toda la prueba, que el acusado, en efecto, cometió la "mala conducta" en cuestión.

En atención a lo antes discutido, el Tribunal Supremo federal puntualizó que los foros de primera instancia poseen amplia discreción para alterar el orden de la prueba y, en ese sentido, luego de que se admita condicionalmente la prueba de conducta específica en cuestión, y mientras continúe el juicio, el tribunal podría, incluso, estimar -bajo la totalidad de la prueba presentada y conforme la Regla federal 104(b)- que el proponente, en este supuesto el Estado, no logró establecer el valor probatorio de la "mala conducta". *Id.*

En el contexto específico de los hechos en *Huddleston*, la condición de hecho era establecer si los enseres eléctricos y televisores habían sido hurtados; esto, habiendo ocurrido en un **evento anterior** a los que dieron lugar a la acusación por hurto de las videocintas. El Tribunal Supremo federal sostuvo que un jurado pudo haber razonablemente concluido que, conforme a la evidencia presentada en el juicio, dichos objetos, que en su momento estuvieron en posesión del acusado, habían sido hurtados y que dicha evidencia era admisible para establecer el elemento subjetivo ("con conocimiento") de que el señor Huddleston había poseído unas videocintas hurtadas.

Por último, el Tribunal Supremo de Estados Unidos reiteró que cualquier posible peligro de **perjuicio indebido** en contra del acusado quedará **subsanado** por una serie de elementos o factores **necesarios** para evaluar la evidencia en cuestión. *Id.* en las págs. 691-92. Primero, el texto de la Regla federal 404(b) exige que la prueba de carácter se ofrezca para un propósito distinto al de establecer la propensión a incurrir en una "mala conducta" en el acto delictivo imputado. Segundo, el análisis en cuanto a la **pertinencia** de esa "mala conducta", según los parámetros de la Regla federal 402, debe ser considerada en conjunto con los parámetros de la Regla federal 104(b) sobre admisibilidad limitada (condicionada). Tercero, al examinar todo esto, corresponde evaluar, conforme a la Regla federal 403, si el valor probatorio de "mala conducta" resulta mayor al perjuicio indebido que podría causar; es decir, entra en juego la discrecionalidad que ostentan los tribunales para **excluir** cierta evidencia pertinente pero que resulta perjudicial. Por último, bajo la Regla federal 105, a solicitud de parte, se deben impartir **instrucciones limitativas** al jurado para que se evalúe la prueba presentada únicamente para establecer motivo, oportunidad, intención, preparación, plan, conocimiento, identidad, ausencia de error o accidente, o para establecer o refutar una defensa.[38]

---

[38] En específico, el Tribunal Supremo federal estableció que:

En síntesis, la necesidad de recurrir a todos estos factores implica que el hecho de que un proponente logre establecer la **pertinencia condicionada** de la "mala conducta" (factores uno y dos) esto, de por sí, no asegura su admisibilidad. El *quantum* de prueba establecido en *Huddleston* anclado en "la razonabilidad del jurado" **no basta** para permitir prueba de "mala conducta". Según el Tribunal Supremo de Estados Unidos se requiere, además, establecer el valor probatorio de la conducta específica *vis-á-vis* el perjuicio indebido que pueda causar, mediante un "examen nivelador" e instrucciones al jurado, si así se solicita, sobre el carácter limitado del ofrecimiento en cuestión (factores tres y cuatro).[39]

---

> [F]first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402— as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice, and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Huddleston*, 485 US en la pág. 691-92 (citas y notas al calce omitidas).

[39] Véase David P. Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, sec. 4.5., en las págs. 232-270 (Aspen Publisher, 2009) (Cumulative Supplement, 2018), para un análisis minucioso sobre el estándar establecido en *Huddleston*. Véase además, Vélez Rodríguez, *supra*, en las págs. 313-322.

La acogida de la normativa establecida en *Huddleston* por parte de otras jurisdicciones estatales estadounidenses ha sido variada. Véase Leonard, *The New Wigmore*, *supra*, en la pág. 287. Conviene recordar que la decisión de *Huddleston* **no obliga** a los estados y ni a Puerto Rico puesto que la Cláusula de Supremacía de la Constitución de los Estados Unidos no requiere que las jurisdicciones estatales interpreten sus leyes de la misma forma que los tribunales federales, incluso cuando contengan el mismo lenguaje. Véase Const. EE. UU., art. VI, sec. 2. En atención a ello, para poder comprender a cabalidad las ventajas y desventajas de adoptar en Puerto Rico lo resuelto en *Huddleston*, conviene considerar ciertas determinaciones de los tribunales supremos estatales que han atendido controversias relacionadas con la regla equivalente a nuestra Regla 404(B) en sus respectivas jurisdicciones. Veamos.

## C.

Al evaluar cuáles jurisdicciones estatales han adoptado el estándar establecido en *Huddleston*, el tratadista Imwinkelried comenta que varias no tuvieron otra opción que **rechazar** la normativa federal porque los informes oficiales sobre sus respectivas reglas de evidencia o decisiones estatales anteriores requerían un *quantum* de prueba distinto al pautado por el máximo foro federal. E. J. Imwinkelried,

*"Where There's Smoke, There's Fire": Should the Judge or the Jury Decide the Question of Whether the Accused Committed an Alleged Uncharged Crime Proffered Under Federal Rule of Evidence 404?*, 42 St. Louis U. L.J. 813, 831 (1998) (en adelante, *Imwinkelried*, *Where There's Smoke*). En otras instancias, las asambleas legislativas estatales enmendaron las reglas de evidencia para incorporar *Huddleston* o establecer una metodología diferente. *Id.* en la pág. 832. Por último, un grupo nutrido de jurisdicciones estatales incorporaron o rechazaron, por la vía judicial, el *quantum* de prueba de *Huddleston* sobre "la razonabilidad del jurado". *Id.*

En el caso de Puerto Rico, como se mencionó anteriormente, la Opinión que se certifica hoy constituye la **primera ocasión** en la que este Tribunal se expresa específicamente en torno al alcance de la regla en cuestión, incluso bajo la Regla 20(B) de las Reglas de Evidencia de 1979.[40] De hecho, el Comité Asesor Permanente de las Reglas de Evidencia, con relación al caso de *Huddleston*, expresó que:

> El Comité es consciente del caso federal *Huddleston* v. U.S. en donde el Tribunal Supremo Federal resolvió que la admisión de actos específicos de conducta, ofrecida bajo la Regla Federal de Evidencia 404(b), es asunto de "pertinencia condicionada" sujeta a la Regla Federal 104(b). Existen argumentos igualmente convincentes para alegar que la determinación

---

[40] Previo a esta decisión, sólo en *Pueblo v. Martínez Solís*, 128 DPR 135 (1991) hicimos una breve referencia a la Regla 20(B) anterior.

preliminar de admisibilidad debe realizarse bajo el crisol de la Regla 109(A)(Regla 9(A) de 1979). **Estimamos prudente no expresarnos al respecto y dejar a la interpretación jurisprudencial la decisión de si seguir o no el precedente federal.**

*Informe de las Reglas*, *supra*, en la pág. 151 (citas omitidas) (énfasis suplido).

Como se desprende de las expresiones del Comité Asesor Permanente, existen "argumentos igualmente convincentes" para decidir si la determinación de admisibilidad de prueba presentada al amparo de la Regla 404(B) se debe realizar en conjunto con la Regla 109(A) o la Regla 109(B). La Regla 109(A) sobre admisibilidad en general implica que le corresponde al juez o jueza, **y no al jurado**, determinar la admisibilidad del "uncharged misconduct". Mientras que, como ya se discutió anteriormente, un análisis de la Regla 404(B) en conjunto con la Regla 109(B) sobre admisibilidad condicionada, indica que "un juez sólo hace una determinación **literalmente** preliminar, quedando **en manos del jurado** la determinación final de admisibilidad". Chiesa Aponte, *Reglas de Evidencia Comentadas*, *supra*, en la pág. 46 (énfasis suplido).

Lo señalado por el Comité Asesor Permanente ha sido, precisamente, el debate que se ha suscitado en los distintos tribunales supremos estatales. Algunos optaron por dejar en manos del juez la determinación de admisibilidad de "mala conducta", fundamentados en distintos *quanta* de prueba, a saber: preponderancia de la prueba, prueba clara y convincente o más allá de duda razonable; mientras que otras

jurisdicciones siguieron el análisis esbozado por el Tribunal Supremo federal en *Huddleston*.[41] Véase Chiesa Aponte, *Tratado de Derecho Probatorio*, *supra*, en la pág. 82.

Entre las jurisdicciones que se **alejaron** de la decisión de *Huddleston* y adoptaron por la vía judicial el *quantum* de preponderancia de la evidencia en manos del juzgador están Colorado, Oregón, Virginia del Oeste y Washington. De otra parte, aquéllas que incorporaron por la vía judicial el *quantum* de prueba clara y convincente en manos del juzgador son las jurisdicciones de Arizona, Delaware, Distrito de Columbia, Florida, Nueva Jersey, Maryland y Nueva York, entre otros. Curiosamente, sólo el estado de Texas requiere que una "mala conducta" sea establecida mediante el riguroso *quantum* de más allá de duda razonable; aunque el tribunal apelativo de dicho estado parece haberse alejado del mismo.[42]

Ahora bien, una **mayoría** de los estados han acogido lo decidido por *Huddleston*, fundamentados en que desean mantener un grado de uniformidad con las Reglas de Evidencia federales o porque coinciden con el razonamiento del máximo foro federal. Entre ellos se encuentran los estados de Alaska, California, Connecticut, Georgia, Massachusetts, Dakota del Sur, Michigan, Wisconsin, Vermont, Virginia, entre otros.[43]

---

[41] Véase Leonard, *The New Wigmore*, *supra*, en las págs. 287-299; 12-13 (Cum. Suppl. 2018).
[42] *Id.* en la pág. 299.
[43] Véase, Jason Tortora, *Reconsidering the Standards of Admission for Prior Bad Acts Evidence in Light of Research on False Memories and Witness Preparation*, 40 Fordham Urb. L.J. 1493, 1510-1512 (2013), para un resumen detallado de la

En relación con esto último, el tratadista Imwinkelried, comenta que:

> Although the *Huddleston* decision is several decades old, during that period of time most state supreme courts have not had an occasion to revisit the question of the standard of proof for establishing the defendant's identity as the perpetrator of an uncharged act. Consequently, the battle remains to be fought in many jurisdictions. **The *Huddleston* position has emerged as the prevailing view**, but the clear and convincing evidence standard still has adherents in a significant minority of states.

Véase E. J. Imwinkelried, *Uncharged Misconduct Evidence*, sec. 2:9, en la pág. 2-57 (West Group, Revised Edition, 2013) (énfasis suplido).

Para propósitos ilustrativos, y como parte del ejercicio de derecho comparado, reseñaré brevemente las decisiones de los estados de Colorado (preponderancia de la prueba) y Arizona (prueba clara y convincente); enfocándome no tanto en los hechos particulares, sino en los fundamentos por los cuales rechazaron el estándar establecido en *Huddleston*.[44]

### D.

En *People v. Garner*, 806 P.2d 366 (Colo. 1991), el Tribunal Supremo de Colorado se alejó de la normativa pautada en *Huddleston* fundamentado en el hecho de que en dicha jurisdicción existía un "long standing restrictive practice concerning the admisibility of other-crime evidence". *Id.* en

---

jurisprudencia más reciente de tribunales supremos estatales sobre su equivalente a nuestra Regla 404(B).

[44] Estos dos (2) estándares, distintos al de *Huddleston* son los que han recibido mayor apoyo por parte de los tribunales supremos estatales, como se mencionó anteriormente. Por tal razón, no hay necesidad de discutir aquellas jurisdicciones que afirmativamente adoptaron *Huddleston*.

la pág. 372. Asimismo, sostuvo que la prueba de "mala conducta" necesariamente crea un riesgo de perjuicio indebido en contra del acusado el cual podría influenciar al jurado, independientemente de las debidas precauciones que tome el juzgador. En atención a ello, adoptaron el *quantum* de preponderancia de la evidencia para establecer que el "uncharged misconduct" ocurrió y que fue cometida por el imputado; para dicho foro, esto sirve como salvaguarda ante un potencial perjuicio indebido hacia la persona imputada. Bajo este *quantum* de prueba, el Tribunal Supremo de Colorado resolvió que, en los hechos particulares del caso ante su consideración, el acusado, en efecto, había cometido los actos anteriores (asesinar a dos personas) y que, conforme a su regla de evidencia, se podía presentar dicha prueba para establecer su identidad.

De otra parte, en *State v. Terrazas*, 944 P.2d 1194 (Ariz. 1997), el Tribunal Supremo de Arizona, en una decisión *en banc*, rechazó la normativa adoptada en *Huddleston* y aclaró que previo a dicha decisión federal la gran mayoría de las jurisdicciones estatales estadounidenses asignaban la tarea final de evaluar la admisibilidad de "uncharged misconduct" al juzgador de instancia. Para dicho foro, "[t]o allow a lesser standard in a criminal case is to open too large a possibility of prejudice". *Id.* en la pág. 1198. Por tal razón, acogieron el *quantum* de prueba clara y convincente por ser una estándar claro y reconocido por litigantes y los

jueces por igual y que, a su vez, resulta cónsono con el debido proceso ley contenido en la Constitución federal y su propia constitución estatal. *Id.* A la luz de este *quantum* de prueba, el Tribunal Supremo de Arizona concluyó que no podía inmiscuirse en el razonamiento del juez de primera instancia cuando éste valora la prueba de "mala conducta" (en torno a un robo) y, por ende, revocó a los foros inferiores y ordenó un nuevo juicio.

Al analizar estas dos (2) decisiones estatales, el tratadista Imwinkelried comenta que, para varias jurisdicciones estatales y otros estudiosos del tema, la preocupación principal en contra de adoptar el estándar de *Huddleston* estriba en una falta de confianza en la figura del jurado. Imwinkelried, *Where There's Smoke*, *supra*, en la pág. 834 ("[T]he key question is whether the jury can be trusted to make the decision on the preliminary or foundational fact."). En respuesta a ello, Imwinkelried sostiene que dicha desconfianza -atada con el presunto perjuicio indebido que la prueba de "mala conducta" supuestamente podría causar- nace de una **premisa errónea**. En palabras del tratadista:

> If a juror decided that the accused did not perpetrate an uncharged act, it is difficult to understand why the juror would nevertheless hold the act against the accused. Quite to the contrary, if the juror concluded that the act did not occur or that a third party committed the act, **common sense and fairness would naturally lead the juror to disregard testimony about the act in deciding the accused's guilt or innocence.** The average person should understand the normative proposition

> that the accused should not be held legally liable for an act unless the accused was personally involved in the commission of the act. Thus, in the typical case, it seems more sensible to accept the *Huddleston* Court's contrary assumption that the jurors will be capable of setting aside the testimony about the uncharged act. **The risk of misuse of the evidence largely evaporates if it is unlikely that the jurors will consider the evidence at all.**

*Id.* en la pág. 836 (énfasis suplido).[45]

Como se desprende de esta aseveración, el razonamiento de *Huddleston* -en particular el rol importante que juegan las instrucciones al jurado- subsana cualquier daño potencial. De hecho, para Imwinkelried el estándar de *Huddleston* representa un triunfo para la concepción Jacksoniana de la democracia estadounidense, provisto que la figura del jurado-lego constituye una de las características más importante de las instituciones democráticas del sistema legal norteamericano. *Id.* en la pág. 845. Por último, conviene destacar que también se ha señalado que adoptar un estándar más riguroso a *Huddleston*, en una etapa tan temprana

---

[45] La única instancia en la cual el tratadista Imwinkelried estima que el estándar de *Huddleston* podría resultar problemático surge en la situación **atípica** de que, en un procedimiento penal, el Ministerio Público presente prueba testimonial de varios testigos sobre múltiples pruebas de "mala conducta" parecidas a la conducta imputada. Esto, a su entender, podría activar en el jurado-lego un razonamiento inferencial ("doctrine of chances") que posiblemente resulte perjudicial para el acusado. En este contexto, el Profesor invoca el proverbio popular "where there's smoke, there's fire" como ejemplo para su preocupación. A pesar de esto, Imwinkelried entiende que estos supuestos suelen ser **excepcionales** y que, para evitar un potencial efecto dañino, le corresponde al juzgador emplear **instrucciones específicas y completas** a los miembros del jurado. Véase Imwinkelried, *Where There's Smoke*, *supra*, en las págs. 836-840.

de un proceso judicial, conllevaría que, si la prueba de "mala conducta" que se intenta presentar es de carácter testimonial, dichos testigos tendrían que presentar testimonios muy detallados y específicos que, a su vez, podría resultar en cierta preparación de testimonios falsos ("witness preparation of false testimony") por parte del Ministerio Público.[46] Esta preocupación no estaría presente o se reduciría al mínimo bajo el *quantum* de la "razonabilidad del jurado".

A la luz de la discusión que antecede, no albergo duda alguna que este Foro debe adoptar **-en su totalidad-** el estándar esbozado por el Tribunal Supremo de Estados Unidos en *Huddleston*. Ahora bien, previo a evaluar específicamente la controversia ante nuestra consideración y las determinaciones de los foros recurridos, corresponde discutir las consideraciones de índole constitucional de extender a Puerto Rico la decisión del máximo foro federal en *Dowling*, como propone la Opinión mayoritaria. Veamos.

**III.**

**A.**

En *Dowling*, el Gobierno de Estados Unidos presentó acusaciones en contra de Sr. Reuben Dowling por los delitos federales de robo de un banco y robo armado. Durante el juicio, se presentó prueba de que el señor Dowling utilizó una máscara de esquiar y estuvo armado con una pistola

---

[46] Véase Tortora, *supra*, en las págs. 1515-1529.

pequeña. En relación con dicha prueba, una testigo de cargo, la Sra. Vena Henry, declaró que dos semanas luego del asalto al banco, había sido asaltada en su hogar por dos personas, uno de los cuales utilizó una máscara y pistola similares a las que el señor Dowling presuntamente usó en el banco. Asimismo, la señora Henry declaró que cuando el asaltante se quitó la máscara lo pudo identificar y que, en efecto, era el señor Dowling.

En el proceso criminal en contra del señor Dowling por el robo en el hogar de la señora Henry, éste había sido absuelto. Sin embargo, el juez del Tribunal de Estados Unidos para el Distrito de las Islas Vírgenes permitió dicha evidencia al amparo de la Regla federal 404(b) con la intención de establecer la identidad del asaltante del banco. Luego del testimonio de la señora Henry, el juez impartió instrucciones al jurado en torno al propósito limitado por el cual se traía dicho testimonio y les recordó que el señor Dowling había sido absuelto de dicho procedimiento. Esto se le volvió a explicar al jurado justo antes de que entrara a deliberar. El señor Dowling resultó convicto por el robo del banco y fue sentenciado a cumplir setenta (70) años en prisión.

El Tribunal de Apelaciones de Estados Unidos para el Tercer Circuito confirmó la convicción del foro recurrido, pero resolvió que no se debió de haber permitido el testimonio de la señora Henry tras evaluarlo bajo el estándar

de *Huddleston*. Esto, en particular, porque entendió que el perjuicio indebido que pudo haberle causado a Dowling pesaba más que su valor probatorio. Sin embargo, entendió que esto resultó en un "harmless error" porque no comprendía una dimensión constitucional.

Ante el Tribunal Supremo de Estados Unidos, el señor Dowling arguyó que el testimonio de la señora Henry era inadmisible al amparo de la cláusula en contra de la doble exposición y el debido proceso de ley consagrado en la Quinta Enmienda de la Constitución federal. Por voz del Juez Asociado White, el Tribunal Supremo federal sostuvo que la cláusula contra la doble exposición no constituye un impedimento para la presentación de dicho testimonio, puesto que la absolución pudo haber estado predicada en razones ajenas a la identidad el señor Dowling; es decir, existe poco valor inferencial en una absolución. A fin de cuentas, la absolución por la conducta no imputada no tiene efecto de impedimento colateral por sentencia ("collateral estoppel") y, por ende, acertó el Tribunal de Distrito en permitir    el testimonio. Uno de los fundamentos principales para arribar a esta conclusión es que existen unas **diferencias** en cuanto al *quantum* de prueba necesario para permitir la evidencia en cuestión; para la absolución fue más allá de duda razonable y para presentar el testimonio de la señora Henry, el estándar de *Huddleston*, anclado en la "razonabilidad del jurado". *Dowling*, 493 US en las págs.350-52.

El Juez Asociado Brennan disintió y criticó el criterio mayoritario por ser uno hipertécnico y que no tomaba en consideración los intereses y propósitos inherentes a la protección contra la doble exposición. A dicha disidencia se le unieron los Jueces Asociados Marshall y Stevens.

Al comentar sobre la decisión de *Dowling*, el profesor Chiesa Aponte reconoce que ésta no obliga a Puerto Rico, aunque sí señala que –en teoría- este Tribunal podría invocar una "factura más ancha" al amparo de la Constitución de Puerto Rico. E. L. Chiesa Aponte, *Doble Exposición*, 59 Rev. Jur. UPR 479, 505 (1990).

Sin embargo, al margen de esto, el Profesor manifiesta que *Dowling* "está bien concebido y debe seguirse en nuestra jurisdicción". Chiesa Aponte, *Tratado de derecho probatorio*, *supra*, en las págs. 84; Chiesa Aponte, *Evidencia de carácter, supra*, en la pág. 91. Asimismo, Chiesa Aponte critica la Opinión Disidente del Juez Asociado Brennan y sostiene que "el fundamento [de la Opinión mayoritaria] de la cantidad de prueba tiene fuerza lógica". E. L. Chiesa Aponte, *Doble Exposición*, 59 Rev. Jur. UPR 479, 505 (1990). Es decir, para el Profesor, "la base del argumento es que la absolución no establece inocencia sino duda razonable. Si en el procedimiento posterior se exige un *quantum* de prueba menor, no hay impedimento [colateral por sentencia]". *Id.* Esta "fuerza lógica", comenta Chiesa Aponte, a su vez, proviene de "la tendencia clara de la Corte Suprema Federal [de] no

dar efecto de impedimento a una absolución con relación a un caso civil posterior en donde está en controversia la conducta objeto de la absolución". *Id.*

Coincido con el análisis esbozado por el profesor Chiesa Aponte y considero que debemos adoptar en nuestra jurisdicción, además del estándar de *Huddleston*, la normativa pautada en *Dowling*, ya que dicha decisión no atenta contra las protecciones consagradas en nuestra Constitución. Me explico.

**B.**

La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico dispone que "[n]adie será puesto en riesgo de ser castigado dos veces por el mismo delito". Const. PR, Art. II, Sec. 11, LPRA, Tomo 1, ed. 2008, pág. 343. Véase *Pueblo v. Santiago*, 160 DPR 618 (2003). De igual forma, la Constitución de Estados Unidos consagra una protección análoga en su Quinta Enmienda: "No person shall [...] be subject for the same offense to be twice put in jeopardy of life or limb." Const. EE. UU., Enmda. V. Véase además, *Benton v. Maryland*, 395 US 784 (1969) (en donde se resuelve que la protección contra la doble exposición es oponible ante los estados en virtud de la Decimocuarta Enmienda).

Si bien es cierto que el profesor Chiesa Aponte señala que nuestra Constitución pudiese proveer una "factura más ancha" en su protección contra la doble exposición, éste

**limita** dicho análisis al contexto del concurso de delitos y la disolución del jurado por la imposibilidad de llegar a un veredicto. Véase Chiesa Aponte, *Los derechos de los acusados y la factura más ancha*, 65 Rev. Jur. UPR 83, 119 (1996) (En adelante, Chiesa Aponte, *Factura más ancha*). Fuera de esas dimensiones, "[n]o hay base para sostener que se le haya dado o que se le debe dar un contenido mayor a la cláusula" en el orden constitucional puertorriqueño. Chiesa Aponte, *Doble Exposición*, *supra*, en la pág. 480. Chiesa Aponte, *Factura más ancha*, *supra*, en la pág. 119.

La Constitución del Estado Libre Asociado de Puerto Rico requiere que nuestro análisis constitucional esté fundamentado en los principios recogidos en la Carta de Derechos y no que se adopte irreflexivamente una protección mayor a la dispuesta en la Constitución federal, sin consideración ulterior alguna. Así pues, para considerar el alcance de una cláusula constitucional puertorriqueña, aunque ésta cuente con una cláusula análoga en la Constitución de Estados Unidos, es nuestra obligación recurrir, como fuente primaria, al Diario de Sesiones de la Convención Constituyente. Véase Tatiana Vallescorbo Cuevas, *Interpretando La factura más ancha*, 46 Rev. Jur. U.I.P.R. 303, 327-330 (2012).

En atención a ello, surge del Informe de la Comisión de la Carta de Derechos que dicha "sección contiene las garantías que protegen al acusado en el derecho común [y]

[s]e expresan en la forma tradicional para incorporar así el significado jurídico que han adquirido en las interpretaciones judiciales". 4 Diario de Sesiones de la Convención Constituyente de Puerto Rico 2568-2569 (1961). Así pues, no cabe duda de que, "la formulación de nuestra protección constitucional se hizo en función de su contraparte federal, con tal de que se entendiera incorporado el significado judicial de ésta, elaborado a través de numerosas opiniones suscritas por el Tribunal Supremo de EE. UU.". *Pueblo v. Sánchez Valle*, 192 DPR 695,734 (2015) (J. Rodríguez Rodríguez, Op. Disidente) (nota al calce omitida).

Desde un punto de vista metodológico se entiende que, en cuanto a la interpretación **específica** de la cláusula contra la doble exposición, hay un llamado por parte de nuestros Constituyentes a emplear la metodología adjudicativa desarrollada por el movimiento del nuevo federalismo judicial denominada como, "lockstepping". Este acercamiento nos invita a que, en el contexto de un derecho con una cláusula puertorriqueña análoga a la federal (por razón de la *intención original* de los Constituyentes), la interpretación que hagamos sobre nuestra constitución comienza y termina con el análisis de la interpretación que haya hecho sobre ese derecho el Tribunal Supremo federal.[47]

---

[47] Véase *Asoc. de Maestros v. Departamento de Educación*, 2018 TSPR 150, 6-9 (Sentencia) (J. Rodríguez Rodríguez, Op. Disidente), para una discusión más a fondo sobre el "new judicial federalism". Véase además, Jorge M. Farinacci Fernós, *Originalism in Puerto Rico: Original Explication and*

A la luz de esto, la normativa de *Dowling* resulta completamente compatible con la Constitución del Estado Libre Asociado de Puerto Rico y no hay impedimento alguno para que sea adoptada en nuestra jurisdicción.[48] Esto sin necesidad de recurrir a nuestra jurisprudencia, a mi juicio desacertada, en materia de la cláusula en contra de la doble exposición (en particular, su vertiente de impedimento colateral por sentencia).

**IV.**

_____

*Its Relation with Clear Text, Broad Purpose and Progressive Policy*, 85 Rev. Jur. UPR 203, 205 (2016), para un estudio sobre las teorías adjudicativa, o falta de ellas, empleadas por este Tribunal en materia de Derecho Constitucional.

[48] Es por ello que las decisiones de los tribunales estatales de Massachusetts, Carolina del Norte y Hawái brevemente discutidas por el Juez Asociado señor Estrella Martínez en su opinión de conformidad en parte y disidente en parte tienen **un escaso valor persuasivo** en relación con el ordenamiento constitucional puertorriqueño. Primero, el estado de Massachusetts, a diferencia de Puerto Rico, no tiene una disposición expresa en su propia constitución en contra de la doble exposición. De ahí que, al aplicar principios de derecho común anglosajón, su hermenéutica de adjudicación constitucional permite conceder una protección mayor al mínimo federal. Asimismo, la decisión citada del estado de Carolina del Norte no rechazó *Dowling* bajo fundamentos constitucionales, sino que realizó un análisis estatutario de sus reglas de evidencia y cómo éstas hacen un llamado a proteger la presunción de inocencia. Por último, a pesar de que Hawái sí tiene una cláusula en contra de la doble exposición en su constitución, la justificación empleada por dicho tribunal supremo estatal estuvo fundamentada en un precedente en materia de derecho a la intimidad que nada tiene que ver con la controversia en cuestión, y no en un análisis del historial de dicha cláusula constitucional hawaiana. En ese aspecto, estimo que, en dicha determinación, la metodología adjudicativa constitucional del estado de Hawái carece de coherencia y resulta cuestionable para fines comparatistas.

Como se indicó, las determinaciones de los foros recurridos estuvieron centradas **exclusivamente** en evaluar si la prueba que el Ministerio Público intentaba presentar constituía en sí una "conducta específica", conforme al texto de la Regla 404(B). El Tribunal de Primera Instancia declaró *no ha lugar* la solicitud del Ministerio Público luego de razonar que la Regla 404(B) requería la "comisión" y no la "imputación" de otros delitos para aceptar dicha evidencia.

De igual forma, el Tribunal de Apelaciones resolvió que "proced[ía] en Derecho la admisión como evidencia en juicio de la conducta específica de un individuo, debe la misma . . . ser un acto probado más allá de toda duda razonable". *Sentencia del Tribunal de Apelaciones del 13 de noviembre de 2016*, en la pág. 4. Como surgen de estas conclusiones de Derecho, los foros recurridos **limitaron** el alcance de la Regla 404(B) al hecho de que exista una convicción previa que compruebe, en conexión al *quantum* de prueba de más allá de duda razonable, la comisión de un delito imputado.

Este razonamiento resulta contrario, en primer lugar, al texto expansivo de la Regla 404(B), el cual no restringe que la conducta específica imputada sea constitutiva de delito. De otra parte, esta interpretación contradice la interpretación que tratadistas puertorriqueños y estadounidenses han esbozado sobre esta regla con relación al hecho de que la mera presentación de evidencia sobre el arresto, la denuncia, la acusación, la sentencia condenatoria

o la absolución en cuanto a una conducta específica previa que sí es constitutiva de delito no resulta suficiente para su admisibilidad, sino que es necesario presentar evidencia de que -en efecto- se incurrió en dicha "mala conducta".

La determinación de los foros recurridos en torno a que el testimonio de la presunta víctima del segundo robo de por sí no podía presentarse como evidencia de conducta específica tuvo el efecto de que el Ministerio Público ni tan siquiera pudiera poner en posición al foro primario de evaluar, mediante el testimonio que se intentaba presentar, si se incurrió en esa conducta imputada. Por todo lo cual, erraron el Tribunal de Primera Instancia y el Tribunal de Apelaciones.

A diferencia de las decisiones de *Huddleston* y *Dowling*, este Tribunal está impedido de aplicar el estándar adjudicativo de la "razonabilidad del jurado" dado que el caso de epígrafe se encuentra en una etapa procesal distinta y no contamos con el beneficio de la prueba que intentaba presentar el Ministerio Público. En dichas decisiones del máximo foro federal, los señalamientos de error en relación con la Regla federal 404(b) surgieron una vez había concluido el juicio en su fondo. Por razón de ello, concurro con la Opinión mayoritaria en cuanto a que procede devolver el caso al Tribunal de Primera Instancia para que el juzgador tenga la oportunidad de evaluar el testimonio de la víctima en el segundo robo y los testimonios de los agentes investigadores.

Este ejercicio interpretativo se tiene que realizar empleando el estándar de *Huddleston* y los factores allí esbozados, que hoy se acoge en nuestro ordenamiento jurídico probatorio. No podemos olvidar que estos elementos buscan **evitar cualquier posible peligro de perjuicio indebido** en contra del acusado.

En el contexto de las Reglas de Evidencia de Puerto Rico, esto requiere que: (1) conforme el texto de la Regla 404(B) la prueba de la "conducta no imputada" se ofrezca para un **propósito distinto** al de establecer el carácter o propensión a incurrir en "mala conducta"; (2) el análisis en cuanto a la **pertinencia** de dicha "mala conducta", según los parámetros de la Regla 402, debe ser considerada **en conjunto** con los parámetros de la Regla 109(B) sobre admisibilidad limitada (condicionada);[49] (3) al examinar todo esto, corresponde evaluar, conforme a la Regla 403, si el valor probatorio de "mala conducta" **resulta mayor** al perjuicio indebido que podría causar; es decir, entra en juego la discrecionalidad que ostentan los tribunales para excluir cierta evidencia pertinente pero que resulta perjudicial ("examen nivelador"), y (4) bajo la Regla 107, a solicitud de parte, se deben **impartir instrucciones limitativas al**

---

[49] Conviene detallar que, en nuestra jurisdicción, hasta el momento, sólo hemos evaluado la regla de admisibilidad limitada (condicionada) en el contexto de la figura de la autenticación, en específico, la cadena de custodia. Véase *Pueblo v. Carasquillo*, 123 DPR 690 (1989); *Pueblo v. Bianchi*, 117 DPR 484 (1986), para una discusión sobre del alcance de dicha doctrina de Derecho Probatorio.

**jurado** para que se evalúe la prueba presentada sólo para los fines a los cuales ésta sería admisible; en otras palabras, para establecer motivo, oportunidad, intención, preparación, plan, conocimiento, identidad, ausencia de error o accidente, o para establecer o refutar una defensa.[50]

Este último factor resulta particularmente importante para la situación de hechos del presente caso dado que la "conducta no imputada" que se desea presentar en evidencia surge de un procedimiento criminal en el cual el señor Serrano Morales resultó absuelto.[51] De prosperar la solicitud del Ministerio Público, y celebrarse un juicio en su fondo con jurado, a la luz de lo resuelto en *Dowling,* el Tribunal de Primera Instancia tiene que impartir instrucciones al jurado en las cuales reitere que esta "conducta no imputada" no se presenta para establecer propensión, que el señor Serrano Morales resultó absuelto de dicho procedimiento y que deben evaluar dicha evidencia bajo un criterio de razonabilidad. Es decir, si razonablemente se podría concluir que ocurrió la "mala conducta" presentada y si fue el señor

---

[50] Estimo que la Opinión mayoritaria no discute a fondo estos elementos y debe quedar claro que la adopción del estándar de *Huddleston* requiere que los mismos se utilicen siempre que se evalúe una solicitud al amparo de la Regla 404(B) y según los hechos particulares de cada caso.

[51] Precisamente, en este ejercicio adjudicativo, se atiende la preocupación adelantada por el Juez Asociado señor Estrella Martínez. Sin embargo, a diferencia de su razonamiento, y como mencioné anteriormente, estimo que, incluso si se evalúa el expediente del segundo procedimiento criminal, no cabe la posibilidad de que se active la cláusula contra la doble exposición (en su vertiente de impedimento colateral).

Serrano Morales quién la llevó a cabo.[52] Sin embargo, de prosperar la solicitud del Ministerio Público, y celebrarse un juicio por tribunal de derecho, le corresponde al propio juez de instancia evaluar la prueba presentada considerando todos los elementos antes mencionados.

**V.**

Por los fundamentos antes expuestos, revocaría la sentencia emitida por el Tribunal de Apelaciones y devolvería el caso al Tribunal de Primera Instancia para que continúe con los procedimientos conforme a los **parámetros específicos** aquí expuestos.

Anabelle Rodríguez Rodríguez
Juez Asociada

---

[52] Esto, sin olvidar que, en la evaluación de la pertinencia, el juez podrá considerar la totalidad de las circunstancias que rodearon el proceso criminal anterior, en el que el hoy acusado resultó absuelto.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario


       v.                  CC-2016-983      Certiorari


Danny Serrano Morales

    Recurrido


Opinión de conformidad en parte y disidente en parte emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ


San Juan, Puerto Rico, a 4 de diciembre de 2018.

Tras un estudio de nuestra Regla 404(b) de Evidencia, _infra_, a la luz de la totalidad del derecho aplicable, coincido con la Mayoría de este Tribunal en que esta norma evidenciaria no necesariamente requiere, para la admisión de evidencia de conducta específica distinta a la imputada, que dicha conducta haya sido probada más allá de duda razonable en un proceso judicial anterior. Claro está, siempre y cuando, se cumpla alguno de los propósitos establecidos en la propia Regla. Por ello, coincido con revocar la sentencia del Tribunal de Apelaciones y devolver el caso al foro de instancia para que se celebre una vista.

Ahora bien, me veo obligado a **disentir** en cuanto a las instrucciones impartidas al Tribunal de Primera Instancia y los asuntos que debe considerar al momento de determinar si procede la admisión de la prueba propuesta por el Ministerio Público en el escenario de que la misma esté basada en unos hechos previamente juzgados con un fallo de absolución. En esa línea, entiendo que, contrario al razonamiento de la Mayoría de este Tribunal, la doctrina de impedimento colateral de la cláusula de doble exposición podría activarse ante hechos como los que tenemos ante nuestra consideración. Resulta peligrosa la práctica de adoptar jurisprudencia que nos resulta persuasiva, cuando precisamente incide y menoscaba derechos constitucionales. Ello, nos puede llevar a resultados discordes con las garantías extendidas en la Constitución de Puerto Rico.

A continuación, repaso los hechos y trámites procesales que originaron la controversia ante nosotros.

I

El 20 de marzo de 2015, el Ministerio Público presentó dos denuncias contra el Sr. Danny Serrano Morales (señor

Serrano Morales) por infringir el artículo 190(e) del Código Penal de 2012, 33 LPRA sec. 5260, y el artículo 5.07 de la Ley de Armas, 25 LPRA sec. 458(f). Según las denuncias, los hechos se remontan al 24 de febrero de 2015 y se le imputa al señor Serrano Morales haberse apropiado ilegalmente, por medio de violencia o intimidación con el uso de un rifle, de unos bienes muebles pertenecientes al Sr. Jorge Luis Hernández Medina. Tras los trámites procesales de rigor, el Ministerio Público presentó acusaciones por ambos delitos.

Posteriormente, el Ministerio Público presentó una moción al amparo de la Regla 404(b) de Evidencia, 32 LPRA Ap. VI, en la que le solicitó al tribunal admitir en evidencia la prueba relacionada a un segundo robo también imputado el señor Serrano Morales, **ventilándose simultáneamente** en otra Sala del **mismo tribunal**. La prueba consistía tanto del testimonio de la víctima en ese segundo robo, como de los agentes investigadores, al igual que cualquier evidencia relacionada con tales testimonios. Entiéndase, pretendía presentar prácticamente la totalidad

de la prueba de ese otro caso. Según el Ministerio Público, el segundo robo en cuestión ocurrió alrededor de 30 minutos después que ocurrieron los hechos que se ventilan en este juicio y componían **"acciones concertadas en común como parte de un plan"**. (Énfasis suplido).[53] Arguyó el Ministerio Público que el propósito de presentar esa prueba era establecer la identificación del señor Serrano Morales mediante actos o delitos que presentan el mismo modus operandi.[54] Asimismo, el Ministerio Público negó que su intención respondiera a conducir al juzgador a inferir propensión del acusado a incurrir en una conducta en particular. En oposición, el señor Serrano Morales argumentó que la Regla 404 de Evidencia prohíbe traer prueba de otro

---

[53]Moción al amparo de la Regla 404(b) de las de Evidencia, pág. 2.

[54]En su moción, el Ministerio alegó que "ambos robos fueron llevados a cabo de la misma manera . . . ya que el alegado asaltante de ambos robos . . . llegó en la misma guagua Rodeo color vino", también "acompañado por otro individuo" quien permanecía en el volante de la guagua mientras el asaltante se bajaba por el lado del pasajero y "apunta a su víctima con un rifle (arma larga) color negro y verde (camuflaje)". Continúo el Ministerio Público alegando que en ambos robos el asaltante es descrito con tez trigueña, que vestía con gorra de camuflaje, pantalón largo, camisa negra y un pañuelo en la cara.

caso y que la excepción contenida en el inciso (b) de la citada Regla solo permite, bajo las presentes circunstancias, traer prueba de otros casos criminales en los que la persona haya sido declarada culpable.

El Tribunal de Primera Instancia, luego de escuchar las argumentaciones de las partes, declaró no ha lugar en corte abierta la moción presentada por el Ministerio Público. Dispuso que admitir evidencia de un asunto que se estaba ventilando en otra Sala tendría el efecto de resolver el asunto y la cuestión última que le correspondía a esa otra Sala resolver. Resaltó que permitir la admisibilidad de la evidencia en controversia en esos momentos implicaba acabar con la presunción de inocencia del acusado en cuanto a ese otro juicio. Por ello, concluyó que la prueba que pretendía traer el Ministerio Público no constituía, al momento de la solicitud, prueba de conducta específica atribuible al imputado que fuese admitida en virtud de la Regla 404(b) de Evidencia, supra.

Inconforme con la decisión, el Estado recurrió en certiorari al Tribunal de Apelaciones arguyendo que el foro de instancia erró al interpretar como inadmisible bajo la

Regla 404(b), supra, la evidencia hasta que no recayera un fallo de culpabilidad en el otro caso. Por su parte, el Tribunal de Apelaciones confirmó el dictamen del Tribunal de Primera Instancia. Para el foro apelativo intermedio, no es procedente en Derecho presentar prueba de otro pleito judicial inconcluso por la alegada comisión de un acto criminal distinto al que se le está imputando y sin éste haber sido probado más allá de duda razonable en ese otro pleito. Determinó el Tribunal de Apelaciones que, para que proceda en Derecho la admisión de esa evidencia de conducta específica, ésta tenía que ser probada bajo el quantum de prueba de un caso criminal (más allá de duda razonable), acorde "con el principio cardinal de la presunción de inocencia".[55]

Así las cosas, el Estado recurrió, vía certiorari, a este Tribunal y señaló como único error que se denegara su solicitud al amparo de la Regla 404(b) de Evidencia, supra. En su escrito, argumentó, a modo de síntesis, que la Regla 404(b) de Evidencia, supra, es equivalente a la Regla 404(b)

---

[55]Sentencia del Tribunal de Apelaciones, pág. 7.

de las Reglas de Evidencia Federal, Fed. R. Evid. 404(b), y que, por tanto, su interpretación debía tomar en cuenta la interpretación dada a esta última por el Tribunal Supremo de los Estados Unidos. A base de ello, señaló que en Huddleston v. U.S., 485 US 681 (1988), el Tribunal Supremo federal determinó que, para que el juez admita prueba de conducta específica por actos distintos al imputado bajo la excepción de la Regla 404(b), supra, no es necesario que el juez determine que la conducta en cuestión ocurrió, sino que bastaba estimar que había base suficiente para que un jurado razonablemente estimara que así fue. Por tanto, aplicando ese análisis, bajo la Regla 404(b) de las Reglas de Evidencia, supra, el Estado indicó que lo único que se requeriría era que el juez examinara la evidencia y decidiera si un jurado razonablemente la creería. Además, arguyó que en Dowling v. U.S., 493 US 342 (1990), el Tribunal Supremo federal determinó que la absolución de la persona por la conducta que se pretende traer en otro proceso no constituye impedimento para su admisibilidad. Determinó que, bajo la Constitución federal, la admisión de tal evidencia no viola la cláusula contra la doble exposición

ni la cláusula que garantiza el debido proceso de ley. Adicional, arguyó que en ese caso también la evidencia que se pretendía traer era para fortalecer la identificación del imputado. Así, sostiene que el Tribunal de Apelaciones erró al interpretar que bajo la Regla 404(b), supra, la admisión de esta prueba requiere que se satisfaga un quantum de prueba más allá de duda razonable.

Por su parte, el señor Serrano Morales argumentó que existe una distinción entre la regla federal y la regla estatal en cuanto al uso del término "comisión de delito". Según su argumento, la regla federal no exige una convicción previa por hechos delictivos distintos a los imputados cuando se pretenden traer como prueba de conducta específica. Según el señor Serrano Morales, nuestra regla, por su lenguaje, requiere una convicción previa en la que se haya demostrado la culpabilidad más allá de duda razonable. Consideró que solo se debe admitir la prueba, en tanto y en cuanto, exista una convicción donde se haya probado la ocurrencia de los hechos extrínsecos al caso más allá de duda razonable. Cónsono con su teoría, permitir los

testimonios en controversia tendría el efecto de litigar un asunto que no le corresponde al procedimiento en cuestión.

**Luego de expedido el recurso y estando pendiente de adjudicación, el señor Serrano Morales presentó ante este Tribunal una moción informativa en la que avisaba sobre la finalización de los procesos en el segundo juicio, caso que se estaba ventilando simultáneamente en otra Sala del mismo tribunal. En ese caso, el señor Serrano Morales fue declarado <u>no culpable</u>, por lo que resultó absuelto de los cargos allí imputados.[56]**

En síntesis, la controversia que llegó originalmente a este Tribunal fue si la admisión de evidencia de conducta específica por alegados actos delictivos extrínsecos al delito imputado para propósitos distintos a establecer propensión bajo la Regla 404(b) de Evidencia, <u>supra</u>,

---

[56]Tras la celebración del juicio en su fondo, el Tribunal de Primera Instancia (Hon. Marta Rosario Santana) dictó su sentencia de la siguiente manera:

Examinada la prueba, el Tribunal declara a dicho acusado **NO CULPABLE** de los cargos de epígrafe y lo absuelve decretando la cancelación y/o devolución de la fianza, si hubiere sido presentada. (Énfasis en el original).

requería una convicción previa sobre esos actos. Esto es, si para poder traer esa evidencia, es necesario que esa conducta primero se haya probado bajo un <u>quantum</u> de prueba más allá de duda razonable en el otro juicio.

Nótese que, tomando en cuenta los últimos acontecimientos del caso, resulta necesario que este Tribunal también determine si, luego de que recayera un dictamen de absolución sobre la conducta específica que se pretende traer en evidencia, esta es admisible a la luz de las garantías mínimas reconocidas bajo la Constitución de Estados Unidos y la Constitución de Puerto Rico.

II

A.

La Constitución de Puerto Rico reconoce la protección contra la doble exposición al expresar que "[n]adie será puesto en riesgo de ser castigado dos veces por el mismo delito". Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1. Esta disposición también forma parte de los derechos conferidos por la Constitución de Estados Unidos. A esos efectos, la Quinta Enmienda de la Constitución federal dispone: "nor

shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . .". Enmda. V, Const. EE.UU., LPRA, Tomo 1. La protección bajo la Constitución federal, reconocida como un derecho fundamental, aplica a los estados y a Puerto Rico a través de la cláusula del debido proceso de ley de la Decimocuarta Enmienda de la Constitución de los Estados Unidos. Pueblo v. Torres Irizarry, 199 DPR 11 (2017); Lugo v. Tribunal Superior, 99 DPR 244 (1970); Benton v. Maryland, 395 US 784 (1969). Asimismo, la protección está reconocida en nuestro ordenamiento jurídico a nivel estatutario. Véase, Regla 64(e) de Procedimiento Criminal, 34 LPRA Ap. II.

La cláusula contra la doble exposición busca "evitar que el Estado, con todos sus recursos y poderes, abuse de su autoridad y hostigue a un ciudadano con múltiples procedimientos intentando conseguir su convicción por la comisión de una misma conducta delictiva". Pueblo v. Santiago, 160 DPR 618, 627 (2003). También evita que el Estado tenga una segunda oportunidad para presentar prueba y tome ventaja sobre lo aprendido en el primer juicio en cuanto a las fortalezas del caso de la defensa y las

debilidades de su propio caso. Íd., pág. 628. Véase, Pueblo v. Martínez Torres, 126 DPR 561, 568 (1990); Plard Fagundo v. Tribunal Superior, 101 DPR 444, 448 (1973); United States v. DiFrancesco, 449 US 117, 128 (1980); Green v. United States, 355 US 184, 187-88 (1957).

Para poder invocar la protección de la cláusula constitucional contra la doble exposición se tienen que cumplir con los siguientes requisitos: (1) que el procedimiento o la sanción a la que esté sujeto el ciudadano sean de naturaleza criminal o conllevar el estigma o privación de libertad o propiedad; (2) que el juicio se haya iniciado o celebrado, que se efectúe bajo un pliego acusatorio válido y en un tribunal con jurisdicción, y (3) la existencia de un segundo proceso en el cual se pretenda procesar al acusado por la misma conducta delictiva por la cual ya fue convicto, absuelto o expuesto. Pueblo v. Sánchez Valle et al., 192 DPR 594, 602-603 (2015); Pueblo v. Santiago, supra, págs. 628-629. En cuanto al segundo requisito, en Pueblo v. Martínez Torres, supra, pág. 568, el Tribunal expuso que "[b]asta con que el juicio haya comenzado, o sea, que la persona quede expuesta". A estos

efectos, el Tribunal expresó, citando a la profesora Dora Nevares Muñiz, que "[e]n casos por jurado, el juicio comienza al tomársele el juramento definitivo [al jurado] para oficiar en la causa; en casos por tribunal de derecho, al tomársele el juramento al primer testigo". Íd.

La garantía constitucional contra la doble exposición protege al ciudadano contra: (1) ulterior exposición tras absolución por la misma ofensa; (2) ulterior exposición tras convicción por la misma ofensa; (3) ulterior exposición tras exposición anterior por la misma ofensa, y (4) castigos múltiples por la misma ofensa. Pueblo v. Santiago, supra, pág. 628.

Más allá de las acepciones antes mencionadas, se ha reconocido como una extensión de tal protección constitucional la doctrina de impedimento colateral. El Tribunal Supremo federal incorporó la doctrina de impedimento colateral bajo la garantía constitucional contra la doble exposición en Ashe v. Swenson, 397 US 436 (1970). Al definir lo que implica "collateral estoppel" indicó: "[i]t means simply that when an issue of ultimate fact has once been determined by a valid and final judgment,

that issue cannot again be litigated between the same parties in any future lawsuit". Íd., pág. 443. De ese modo, aplicó la doctrina de impedimento colateral en el contexto de la protección contra exposiciones ulteriores tras un veredicto de absolución. Allí, se aplicó a dos procesos judiciales consecutivos relacionados a una misma relación de hechos.[57]

El Tribunal Supremo federal determinó que, mediada una absolución sobre un asunto de cuestión última, en ese caso la identificación, el asunto no puede volver a litigarse en un juicio criminal posterior. No obstante, añadió el Tribunal que la doctrina tiene que aplicarse en un contexto realista y racional. A base de ello, delineó la manera en

---

[57]En <u>Ashe v. Swenson</u>, 397 US 436 (1970), se había acusado a un individuo de perpetuar un robo a mano armada a seis jugadores de póker, además de haber robado un vehículo. En un primer juicio, los testigos tuvieron problemas al identificar al acusado, por lo que resultó absuelto por insuficiencia de evidencia. El individuo fue acusado nuevamente, esta vez por el robo a otro de los jugadores de póker. En el segundo juicio, se pretendía traer el testimonio de los mismos testigos que testificaron en el primer caso, con la diferencia que en esta ocasión los testigos brindaron detalles que no trajeron en el primer juicio. El acusado obtuvo un veredicto de culpabilidad en el segundo juicio.

que los tribunales deberán hacer esa determinación en relación al pleito judicial anterior. Específicamente, expresó:


Where a previous judgment of acquittal was **based upon a general verdict**, as is usually the case, **this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration'**. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings. **Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal**. (Énfasis suplido) Ashe v. Swenson, supra, pág. 444 (citas omitidas).


A ello, añadió:


The question is not whether Missouri could validly charge the petitioner with six separate offenses for the robbery of the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could

constitutionally hale him before a new jury to
litigate that issue again. Íd., pág. 446.[58]

B.


Existe un principio fundamental de que todo acusado o
demandado sea juzgado por los hechos que se le imputan y no
por su carácter o conducta pasada. E.L. Chiesa Aponte,
Reglas de Evidencia Comentadas, 1ra ed., San Juan, Ed.
Situm, 2016, pág. 83. De esa manera, como norma general, la
Regla 404(b) de Evidencia, supra, ordena la exclusión de
prueba de mala conducta distinta a la imputada cuando se
pretende traer con el fin de probar la propensión del
acusado a incurrir en cierta conducta y de ahí inferir que
éste actuó conforme a la conducta imputada. Íd., pág. 96.
En cuanto a ello, la Regla 404(b) de Evidencia, supra,
dispone:

Evidencia de conducta específica, incluyendo la
**comisión de otros delitos**, daño civil **u otros actos**,
no es admisible para probar la propensión a incurrir
en ese tipo de conducta y con el propósito de inferir
que se actuó de conformidad con tal propensión. Sin

---

[58]En Puerto Rico también se ha adoptado el impedimento
colateral en los casos criminales. Pueblo v. Ortiz Marrero,
106 DPR 140 (1977).

embargo, evidencia de tal conducta es admisible si es pertinente para otros propósitos, tales como prueba de motivo, oportunidad, intención, preparación, plan, conocimiento, identidad, ausencia de error o accidente o para establecer o refutar una defensa. (Énfasis suplido).

Según citado, la regla permite que se admita evidencia de conducta específica distinta a la imputada cuando se ofrece con otros fines legítimos diferentes a establecer propensión. Entre estas excepciones, la regla acepta que se admita evidencia de conducta específica a los fines de establecer la identidad del acusado. Esto es, podría admitirse evidencia de actos anteriores distintivos del acusado que permitan inferir, por la similitud entre esos actos, que se trata de la misma persona. Chiesa Aponte, op. cit., págs. 99-100. También, entre las excepciones expresadas en la regla, se podría permitir traer evidencia de conducta que constituya preparación o plan para cometer el delito imputado.

Ahora bien, el examen de este tipo de prueba debe ser cauteloso, pues puede ser perjudicial al acusado si el juzgador de hechos no distingue su finalidad. Por ello, la Regla 403 de Evidencia, 32 LPRA Ap. VI, resulta fundamental,

"ya que se debe impedir a toda costa que el jurado . . . realice inferencias perjudiciales basadas en alguna supuesta predisposición de la persona acusada a cometer delitos". R. Emmanuelli Jiménez, <u>Prontuario de Derecho Probatorio Puertorriqueño</u>, 4ta ed., San Juan, Ed. Situm, 2015, pág. 215.

A los efectos de la Regla 403 de Evidencia, <u>supra</u>, el Tribunal, a discreción suya, puede optar por excluir evidencia pertinente cuando su valor probatorio queda sustancialmente superado por alguno de los cinco valores negativos que alude la regla. Chiesa Aponte, <u>op. cit</u>., pág. 75. Específicamente, la Regla 403, <u>supra</u>, establece:

Evidencia pertinente puede ser excluida cuando su valor probatorio queda sustancialmente superado por cualesquiera de estos factores:

(a) Riesgo de causar perjuicio indebido.
(b) Riesgo de causar confusión.
(c) Riesgo de causar desorientación del jurado.
(d) Dilación indebida de los procedimientos.
(e) Innecesaria presentación de prueba
   acumulativa.

A esos efectos, es necesario que las excepciones permitidas bajo la Regla 404(b), supra, se analicen tomando en consideración el perjuicio indebido que la admisión de dicha evidencia pudiera ocasionar sobre el proceso judicial que se lleva en contra del acusado. De determinar el juez del foro de instancia que el valor probatorio de la evidencia queda sustancialmente superado por alguno de los cinco valores negativos expresados en la Regla 403, supra, el juez debe excluirla.

Debido a que nuestra Regla 404(b), supra, está basada en la Regla 404(b) de las Reglas de Evidencia Federales, entiendo pertinente incluir a este análisis, a modo comparativo y limitado al asunto en controversia, las interpretaciones que el Tribunal Supremo federal ha expresado sobre dicha regla.

C.

La Regla 404(b) de las Reglas de Evidencia Federales, Fed. R. Evid. 404(b), lee:

(b) CRIMES, WRONGS, OR OTHER ACTS.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

(B) do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

El Tribunal Supremo de los Estados Unidos ha determinado el alcance de esta regla federal, ante la controversia que nos ocupa, de la siguiente manera. En Huddleston v. U.S., supra, un individuo fue acusado en el foro federal por posesión y venta de bienes robados en el comercio interestatal. El acusado adujo que no conocía la procedencia ilegítima de los bienes. La fiscalía, mediante la Regla 404(b) federal, supra, pretendía traer evidencia de actos similares en los que el acusado también había

tratado de vender mercancía robada de la misma manera en que lo hizo con los hechos que se le acusaban.[59] El propósito de presentar esta prueba era mostrar que el acusado, contrario a lo que adujo, conocía que la mercancía vendida era robada.

En ese caso, el Tribunal Supremo federal estableció que el juez debe determinar si la evidencia presentada bajo las excepciones de la Regla 404(b) federal, supra, se trae para probar un asunto material probativo distinto al carácter del acusado, y si éste estima que un jurado razonablemente podría creer que tal conducta ocurrió. Es decir, rechazó que el proponente de la prueba tuviese que demostrar más allá de duda razonable o por preponderancia de la prueba que el acto previo se llevó a cabo. En esta determinación, el juez no aquilata credibilidad, sino que se basa en un asunto de razonabilidad. Una vez determinado por el juez que un jurado razonablemente podría determinar que es probable que la conducta presentada sí ocurrió, le toca al jurado determinar si entiende probada o no la

_____

[59]De la Opinión no se desprende si el acusado había sido imputado por estos actos en otro proceso criminal.

conducta a la que hace referencia la evidencia. Adviértase que el Tribunal llega a esa conclusión **interpretando exclusivamente la regla y no hace un análisis constitucional sobre el asunto.**

D.

Ahora bien, en Dowling v. U.S., supra, el Tribunal Supremo federal tuvo la oportunidad de analizar la interacción entre el asunto evidenciario de la Regla 404(b) de Evidencia, supra, con el asunto constitucional de la doble exposición y su vertiente de la doctrina de impedimento colateral. Así, determinó que la admisión de evidencia de conducta específica bajo las excepciones de la Regla 404(b) de las Reglas de Evidencia Federal, supra, no viola la cláusula de doble exposición ni de debido proceso de ley de la Constitución federal, aun cuando, en un proceso criminal previo, el acusado haya sido absuelto de esa conducta que se pretende traer. En este caso, se acusaba a un individuo de haber robado un banco. Allí, se pretendía traer como evidencia el testimonio de una señora que, en un alegado altercado posterior en su casa y separado de los hechos del caso en cuestión, logró desenmascarar al intruso,

persona que ella identificó como el acusado. Esa testigo ya había declarado en un procedimiento criminal anterior instado contra el acusado, procedimiento del cual fue absuelto.

Ante ese cuadro, el Tribunal sostuvo que la evidencia era admisible bajo la Regla 404(b) federal, supra, puesto que se pretendía traer para fortalecer la identificación del acusado basándose en la identificación del primer pleito. Para el Tribunal, la admisión de la evidencia en esas circunstancias no constituye una violación a la doctrina de impedimento colateral de la cláusula de doble exposición. El razonamiento del Tribunal en Dowling v. U.S., supra, sobre el particular se basa en que: (1) la doctrina de impedimento colateral en casos criminales, según establecida en Ashe v. Swenson, supra, requiere que un jurado haya tomado la determinación de absolución sobre un asunto de cuestión última; (2) la prueba sometida bajo la Regla 404(b), supra, según Huddleston v. U.S., supra, se aceptaría requiriendo únicamente que el juez determine si un jurado razonablemente pudiera concluir que el acto ocurrió y que el acusado fue el actor, y (3) una absolución

en un procedimiento criminal no priva al Gobierno de volver a litigar un asunto en otro proceso bajo un estándar de prueba menor.[60] Se razonó que la conducta que se pretendía traer del primer juicio donde surgió la absolución no constituía una cuestión última (ultimate issue) a ser probada en el segundo pleito. También resolvió que el peso de probar que la determinación de absolución recayó sobre ese asunto en particular en el otro procedimiento criminal es del acusado.[61] Aun así, la Corte Suprema aplicó lo anterior y concluyó que la absolución en el primer juicio no estuvo basada en la identificación del allí acusado, motivo por la que tal prueba se permitió en el segundo juicio en virtud de la Regla 404(b), supra.[62]

---

[60]Véase, U.S. v. One Assortment of 89 Firearms, 465 US 354 (1984) (no viola la doctrina de impedimento colateral llevar un proceso civil contra una persona que salió absuelta por los mismos hechos en un caso criminal, puesto que el quantum de prueba requerido en un proceso civil es menor que en uno criminal).

[61]En Dowling v. U.S., 493 US 342 (1992), el Tribunal determinó que el acusado no había probado que el veredicto de absolución en el proceso anterior se había basado en su identificación. Según el Tribunal, el acusado no podía invocar impedimento colateral por sentencia, puesto que no había probado que un tribunal ya había llegado a una determinación sobre ese asunto en particular.

[62]("As the record stands, there is nothing at all that persuasively indicates that the question of identity was at

III

A pesar de que Dowling v. U.S., supra, resuelve una controversia similar a la presente, la Mayoría de este Tribunal no debió aplicarlo automáticamente sin hacer, precisamente, lo que hizo el Tribunal Supremo federal, a saber: analizar integralmente el Derecho Probatorio con el Derecho Constitucional aplicable, dentro de su marco jurisdiccional. Es por ello que disiento en parte de la ponencia mayoritaria porque debimos analizar el contenido mínimo federal, a la luz de las normas constitucionales aplicables al marco jurisdiccional estatal. De hecho, ese fue el ejercicio interpretativo que correctamente han realizado múltiples foros estatales que poseen garantías adicionales al marco federal y que han rechazado adoptar lo establecido en Dowling v. U.S., supra, a base de la interpretación de su estado de derecho. **Por tanto, el citado caso no obliga automáticamente a Puerto Rico en cuanto podríamos reconocer garantías adicionales bajo la Carta de**

---

issue and was determined in Dowling's favor at the prior trial; at oral argument, Dowling conceded as much"). Íd., pág. 674.

**Derechos de nuestra Constitución**. (Énfasis suplido). Chiesa

Aponte, op cit., págs. 102-103.[63] Además, Huddleston v. U.S.,

supra, se limita a interpretar reglas federales, por lo que

su análisis tampoco obliga a los Estados ni a Puerto Rico.

Íd., pág. 102.

Es norma reiterada en nuestro ordenamiento jurídico

que cuando en Puerto Rico se adopta una norma tomada de otra

jurisdicción, también se adopta la interpretación y el

alcance que se le ha dado en ese lugar de origen. UPR v.

Asoc. Pur. Profs. Universitarios, 136 DPR 335, 369 (1994).

---

[63]El Prof. Ernesto Chiesa reconoce que en Puerto Rico la protección contra la doble exposición es mayor que la ofrecida en la Constitución federal, **como mínimo** en las dimensiones del concurso de delitos y la disolución del jurado por la imposibilidad de llegar a un veredicto. E.L. Chiesa, Los derechos de los acusados y la factura más ancha, 65 Rev. Jur. UPR 83 (1996).

Pertinente a la controversia ante nos, en nuestro ordenamiento jurídico se ha incorporado la figura del concurso de delitos, en sus diversas vertientes, como una protección adicional a la garantía constitucional contra la doble exposición. Arts. 71 y 72 del Código Penal, 33 LPRA secs. 5104 y 5105; Pueblo v. Santiago Pérez, 160 DPR 618, 630 (2003); González Zayas v. Tribunal, 100 DPR 136, 139-140 (1971). Al interpretar el alcance de esta protección, hemos expresado que "[l]a misma resulta más beneficiosa para el ciudadano que la garantía constitucional" porque expande el ámbito de protección a "un mismo acto u omisión", distinto al requisito de "un mismo delito u ofensa" constitucionalmente exigido. Pueblo v. Santiago Pérez, supra, págs. 630-631.

No obstante, también es igualmente cierto que los tribunales estatales están llamados a interpretar el derecho local bajo el crisol de sus propias constituciones locales, siempre y cuando, sea para reconocer los mismos o más derechos de los reconocidos por provisiones similares en la Constitución federal. Arizona v. Evans, 514 US 1 (1995); Pueblo v. Dolce, 105 DPR 422 (1976).

A esos efectos, nuestra Regla 404(b) de Evidencia, supra, es casi idéntica a la misma en la versión federal, por lo que la jurisprudencia federal podría resultarnos muy persuasiva. Ahora bien, la aplicación de la Regla 404(b), supra, sobre conducta específica relacionada a otro proceso penal puede incidir sobre protecciones constitucionales. En consecuencia, las interpretaciones dadas por el Tribunal federal en Huddleston v. U.S., supra, y Dowling v. U.S., supra, no pueden ser aplicadas de manera automática en nuestra jurisdicción y mucho menos estamos obligados a adoptarlas. Debe tomarse en consideración su interacción con las garantías reconocidas en nuestra Constitución. Veamos.

En Dowling v. U.S., supra, se rechazó extender el esquema de Ashe v. Swenson, supra, a situaciones evidenciarias en las que el hecho adjudicado se pretende traer como evidencia de conducta específica para otra ofensa. Es por ello, que el Juez Brennan en su disidente, a la que se unieron los Jueces Marshall y Stevens, indicó que "[t]hus, I would extend the collateral-estoppel doctrine to preclude the Government from introducing evidence which relies on facts previously determined in the defendant's favor by an acquittal". Ello, por entender que era lo más cónsono con el propósito mismo del impedimento colateral. Relacionado con ello, la disidencia destacó que el acusado se ve forzado a defenderse por segunda ocasión sobre un asunto ya adjudicado y que ello no va a la par con la protección a la doble exposición.

Principalmente por entender que Dowling v. U.S., supra, limita injustificadamente lo reconocido en Ashe v. Swenson, supra, y que no es acorde con las garantías bajo su estado de derecho, distintos foros máximos estatales han optado por no aplicar automáticamente Dowling v. U.S., supra, en sus jurisdicciones. Véase, Com. v. Dorazio, 37 N.E. 3d 566

(2015) (Massachusetts)[64]; State v. Mundon, 292 P.3d 205

(2012) (Hawaii)[65]; State v. Scott, 413 S.E.2d 787 (1992)

(North Carolina)[66].

Según he mencionado, en Dowling v. U.S., supra, se

limitó la norma establecida en Ashe v. Swenson, supra, al

distinguir la prueba que se pretende traer en virtud de la

Regla 404(b) de Evidencia, supra. A tales efectos, ese Foro

razonó que la absolución en un proceso criminal anterior no

determinaba un "ultimate issue" en relación a una cuestión

---

[64]("We agree with Justice Brennan that the majority in
Dowling does precisely what the Supreme Court in Ashe
admonished, employing a hypertechnical application of the
collateral estoppel doctrine. We add that such an approach
offends the principles of the presumption of innocence, the
significance of being treated 'legally innocent' that
results when the prosecution fails to prove a defendant
guilty beyond a reasonable doubt, and notions of fairness
and finality.").

[65]("Ashe and the dissenters' view in Dowling are thus more
faithful than the majority's position in Dowling to the
principles of the presumption of innocence, the burden of
proof beyond a reasonable doubt and the efficacy of an
acquittal·").

[66]("We concluded that evidence that defendant committed
a prior alleged offense for which he has been tried and
acquitted may not be admitted in a subsequent trial for a
different offense when its probative value depends, as it
did here, upon the proposition that defendant in fact
committed the prior crime.").

evidenciaria en un proceso posterior sobre otros hechos.[67]

Aun así, el Tribunal Supremo federal aplicó el análisis de

Ashe v. Swenson, supra, en cuanto consideró el expediente

del primer juicio del señor Dowling y concluyó que el asunto

de la identificación no fue una cuestión última en el primer

juicio. A pesar de que la Corte Suprema federal parecería

haber descartado el análisis de Ashe en cuanto a un asunto

evidenciario por considerar que no aplica el impedimento

colateral, recurrió a tal análisis en su Opinión. Ello, para

asegurarse que no se tratara de un asunto previamente

adjudicado. Eso nos deja la duda de qué hubiera resuelto el

Tribunal Supremo de los Estados Unidos si, en efecto, el

asunto de la identificación hubiese sido la base de la

absolución anterior. Por ello, sostengo que el análisis de

Ashe v. Swenson, supra, en referencia al examen del

expediente del caso penal anterior no podemos descartarlo

---

[67]"[U]nlike the situation in, the prior acquittal did not determine an ultimate issue in the present case. This much Dowling concedes, and we decline to extend Ashe v. Swenson and the collateral-estoppel component of the Double Jeopardy Clause to exclude in all circumstances, as Dowling would have it, relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted". Dowling v. U.S., supra, pág. 348.

sin más. Esencialmente, porque hay asuntos que inciden sobre derechos constitucionales a favor del acusado.

Además, Dowling, supra, adoptó lo resuelto en Huddleston, supra, sin distinguir que allí no mediaba un fallo de absolución previo, por lo que no se hizo mención de disposición constitucional alguna, pues está resuelto exclusivamente bajo el alcance de las Reglas de Evidencia Federal. En otras palabras, el estándar más laxo de Huddleston, supra, se hizo en otro contexto. Entiendo que el panorama es distinto cuando la evidencia que se pretende traer tiene algún roce con una protección constitucional.

Por otra parte, Dowling, supra, basó su razonamiento en que el impedimento colateral no aplica en los casos civiles ante una absolución previa en el foro criminal, según se aplica en los casos de confiscación, pues el estándar de prueba es menor. De ese modo, el Tribunal Supremo federal razonó que, al ser el estándar de prueba en las cuestiones evidenciarias menor al requerido para demostrar la culpabilidad de un acusado, no aplicaba el impedimento colateral. Sin embargo, la interpretación dada por este Tribunal al impedimento colateral en los casos de

confiscación es diametralmente distinta. Aquí ha prevalecido la postura de que la absolución en un proceso penal constituye un impedimento colateral en el proceso civil de confiscación. Véase, Santini Casiano v. ELA, 199 DPR 389 (2017) (Sentencia); Mapfre v. ELA, 198 DPR 88 (2017) (Sentencia); Coop. Seg. Mult. v. ELA, 180 DPR 655 (2011); Ford Motor v. ELA, 174 DPR 735 (2008); Suarez v. ELA, 162 DPR 43 (2004); Del Toro Lugo v. ELA, 136 DPR 973 (1994); Carlo v. Srio. de Justicia, 107 DPR 356 (1978).

Por ello, aunque el estándar de la Regla 404(b) es menor por ser un asunto evidenciario, no podemos obviar que, en la controversia de autos, la prueba que se pretende presentar de un proceso penal anterior será utilizada en otro proceso penal contra el mismo acusado. Es decir, estamos ante dos procesos, **ambos en el contexto penal**. En esta circunstancia, el acusado tiene unas protecciones constitucionales, como lo sería la protección a la doble exposición. Independientemente de la diferencia del quantum de la prueba y que se traten de procesos judiciales con hechos distintos, el acusado será juzgado más de una vez por el mismo acto delictivo.

Existe otro punto medular que me resulta preocupante y que no es acorde con nuestra jurisdicción, a saber: la carga probatoria que se le impone al acusado. En Dowling v. U.S., supra, al reconocer lo resuelto en Ashe v. Swenson, supra, se determinó que el peso de probar que la determinación de absolución recayó sobre ese asunto en particular en el otro procedimiento criminal es del acusado. El Tribunal expresó que eso no estaba en controversia puesto que el peticionario no cuestionó ni presentó evidencia a los efectos de demostrar que el jurado en el primer procedimiento tomó una determinación basada en su identificación. A esos efectos, el Juez Brennan expresó en su Opinión disidente:

The Court's summary conclusion that the defendant should bear the burden of proof when invoking the collateral-estoppel doctrine fails to serve the purposes of the doctrine and the Double Jeopardy Clause in general. Since the doctrine serves to protect defendants against governmental overreaching, the Government should bear the burden of proving that the issue it seeks to relitigate was not decided in the defendant's favor by the prior acquittal. Dowling v. U.S., supra, pág. 357 (Brennan, J., Opinión disidente).

Esta carga probatoria impuesta al acusado, no debe tener apoyo en nuestra jurisdicción. Al presentar prueba de conducta específica sobre delitos previos, el Estado es el que tiene la carga probatoria de demostrar que cumple con las excepciones de tal regla y con ello su admisibilidad. Por tanto, el Estado es el que tiene la responsabilidad de poner al tribunal en posición que la absolución anterior no constituye un impedimento colateral en el pleito para el cual se pretende utilizar como prueba de conducta específica. Máxime, cuando están de por medio protecciones constitucionales a favor del acusado frente al Estado y a los cuales no ha renunciado.[68]

IV

En el caso ante nosotros, el Ministerio Público solicitó la admisión del testimonio de la víctima y dos agentes investigadores de un alegado robo ocurrido treinta minutos después del robo por el que se le acusa al señor

_____

[68]En Pueblo v. Torres Irizarry, 199 DPR 11 (2017), se reconoció que una alegación preacordada no equivale a una renuncia al derecho a la doble exposición en la etapa apelativa.

Serrano Morales. Según el Estado, se solicita la admisión bajo las excepciones de la Regla 404(b) de Evidencia, supra, con el propósito de establecer la identidad del acusado y establecer conducta preparatoria (plan) conducente al delito imputado. De ese modo, el Estado niega que el propósito de presentar esa evidencia sea llevar al juzgador a inferir propensión y que, por tanto, la admisión de ésta es legítima y permisible. Para basar sus argumentos, expone que la Regla 404(b) de Evidencia, supra, no exige prueba de convicción previa. En ese aspecto en particular, no me queda más que concluir que el Estado tiene la razón.

No hay nada en el lenguaje de la Regla 404(b) de Evidencia, supra, que exija que la admisibilidad de evidencia de conducta específica por una de sus excepciones esté condicionada exclusivamente a que esta evidencia haya pasado por un proceso judicial en el que se haya declarado probado el hecho más allá de duda razonable. La expresión en la regla "incluyendo la comisión" es importante, puesto que, aún si concluyéramos que, por "comisión de otros delitos, daño civil u otros actos", la regla acarrea una connotación de que debe haber un fallo de culpabilidad sobre

estos actos, ésta se dispone de manera inclusiva y no exclusiva. Esto es, se admitiría, bajo esas circunstancias, prueba de conducta específica y de convicciones anteriores.

De ese modo, coincido con el resultado de la Opinión mayoritaria en que la prueba de conducta específica de delitos previamente cometidos y al amparo de la Regla 404(b) de Evidencia, supra, no requiere una convicción previa. Es decir, que el Estado puede presentar prueba de actos delictivos bajo la excepción de la Regla 404(b), supra, sin que tales actos sean previamente sometidos a un proceso penal con un resultado de culpabilidad.

Ahora bien, si el resultado del proceso penal previo es de absolución, hay que reconocer garantías constitucionales que no pueden ser obviadas, como la protección a la doble exposición que cobija a todos los acusados, incluyendo la vertiente del impedimento colateral. **Es por ello que discrepo de la postura de la Mayoría en cuanto a no reconocer la aplicación de la doctrina de impedimento colateral, como corolario de la protección contra la doble exposición, a las circunstancias del caso de autos.** No estamos ante un asunto meramente

evidenciario, sino que se activan protecciones constitucionales, incluidas también el debido proceso de ley; un juicio justo e imparcial y la presunción de inocencia.

A mi juicio, la doctrina de impedimento colateral pudiera aplicar si el hecho que se pretende presentar como evidencia de conducta específica fue sujeto a un fallo de absolución previo. Particularmente, si la absolución estuvo basada en el hecho que se pretende traer como prueba de conducta específica en un próximo juicio penal contra el mismo acusado. Aunque propiamente el acusado no estaría expuesto a ser castigado dos veces por el mismo delito, en una extensión de tal protección, debemos reconocer que al presentarse prueba de conducta específica sobre delitos previos con un resultado de absolución, el acusado está sujeto a ser doblemente juzgado. Además, la prueba de conducta específica sobre tales hechos delictivos previos incidirá en el encausamiento del acusado, ya sea para efectos de la identificación, plan, motivación o cualesquiera de las excepciones reconocidas en la Regla 404(b) de Evidencia, _supra_. Consecuentemente, aun cuando un

juzgador previo determinó que ese hecho no fue probado, se le brinda la oportunidad al Ministerio Público de volver a relitigar el asunto y, con ello, el acusado sea forzado a defenderse nuevamente. Bajo este escenario, el acusado estaría expuesto a defenderse en una segunda ocasión por unos hechos previamente dilucidados en otro pleito criminal. Este peligroso razonamiento trae como resultado que el Estado tenga la enorme ventaja de relitigar casos perdidos, como ocurre en el caso ante nuestra consideración.

Distinto a Dowling, supra, donde se permitió un testigo de un caso previo, en el caso del señor Serrano Morales, el Ministerio Público pretende traer **la totalidad de la prueba del caso previo para intentar probar el mismo propósito**. Sobre ese particular, el Tribunal Supremo federal en Ashe criticó el que se tratara el primer juicio como práctica preparativa para la segunda acusación. En ese caso, el Tribunal concluyó que eso es exactamente lo que la garantía constitucional prohíbe. A todas luces, estamos ante ese cuadro.

Aunque en Ashe se trataba de una misma relación de hechos, procede aplicarlo a la controversia de autos, a

tenor con las dimensiones reconocidas jurisprudencialmente de esa garantía. De ese modo, el Ministerio Público pretende que el acusado relitigue asuntos previamente adjudicados, violando así la esencia propia de la doctrina de impedimento colateral.

Una vez determinado que el impedimento colateral debería aplicar en esta controversia, me parece acertado, según establecido en Ashe, que se evalúe el expediente del caso anterior para determinar si el hecho que se pretende relitigar fue previamente adjudicado a favor del acusado. Ello, como un mínimo esfuerzo del Estado a los fines de conservar la garantía constitucional reconocida a favor del acusado y la cual no debemos desplazar solapadamente.

La Opinión mayoritaria aduce que no ve inconveniente alguno en aplicar la interpretación del Tribunal en Huddleston v. U.S., supra, requiriendo que, ante la presentación de esta evidencia, el juez solo determine, bajo un estándar de evidencia laxo, si un jurado razonablemente podría creer que tal conducta ocurrió. Refuerza su argumento expresando que esto es un asunto de credibilidad que le toca adjudicar al jurado. Sin embargo, no le da peso a que en

Huddleston v. U.S., supra, el Alto Foro federal no tuvo que aplicar ese estándar ante un escenario donde lo que se sopesaba era el impacto que podría tener en las protecciones constitucionales del acusado y donde tampoco se hacía mención de que sobre esa evidencia de conducta que se pretendía traer en el juicio había recaído antes un fallo de absolución. Es decir, Huddleston no tiene las implicaciones constitucionales presentes en el de autos, en el que media un fallo previo de absolución relacionado con la prueba de carácter que se pretende traer a un segundo juicio. Por ello, no debemos minimizar las posibles violaciones a las garantías constitucionales a las que tienen derecho los acusados de delito, al introducir de manera automática evidencia de otros actos imputados por los que el acusado salió absuelto. El análisis no debe ser el mismo cuando la admisibilidad de alguna prueba tiene algún roce con una protección constitucional. Por ello, en estas circunstancias, le corresponde al tribunal, previo a evaluar la admisibilidad de la prueba acorde con Huddleston, analizar las consideraciones e implicaciones constitucionales.

En respuesta a ese particular, la Opinión mayoritaria le da peso a que en Dowling v. U.S., supra, el Alto Foro federal avaló la aplicación de Huddleston v. U.S., supra, aún en los casos donde el Ministerio Público pretende traer evidencia de conducta distinta a la imputada habiendo un fallo absolutorio sobre esos hechos en un proceso criminal distinto. Según discutí previamente, mi postura es que, como máximos intérpretes de nuestra Constitución y de las garantías allí plasmadas, no debemos adoptar Dowling, supra, aislada y automáticamente en nuestra jurisdicción cuando atenta contra la garantía constitucional de doble exposición reconocida expresamente tanto en la Constitución de Puerto Rico como en la Constitución federal.

A tenor con todo lo anterior, coincido en que procede devolver el caso de autos al Tribunal de Primera Instancia para la celebración de una vista a los fines de determinar si procede la admisión de la prueba de conducta específica ofrecida por el Ministerio Público, tanto bajo la consideración de la Regla 404(b) como de la Regla 403 ambas de Evidencia. Ello, particularmente para evitar que se afecte el debido proceso de ley del acusado y determinar,

como establece la Mayoría, si la prueba que se pretende presentar tiene un valor probatorio mayor al perjuicio.

Por mi parte, incluiría instrucciones adicionales a los efectos de ordenar al foro primario evaluar la totalidad del expediente del procedimiento criminal del cual el Estado pretende traer la nueva evidencia. Esto, a los fines de determinar si la absolución en ese otro caso versó sobre algunos de los elementos por los cuales el Ministerio Público interesa presentarla en el presente caso. De responderse en la afirmativa, aplicaría el impedimento colateral (doble exposición) y tal evidencia sería excluida.

VI

Por los fundamentos expuestos anteriormente, estoy conforme con el resultado al que llega la Opinión mayoritaria en cuanto a revocar el dictamen del Tribunal de Apelaciones y devolver el caso al Tribunal de Primera Instancia. Sin embargo, disiento de la adopción de la interpretación establecida en Dowling v. U.S., supra, y en Huddleston v. U.S., supra, a los hechos de autos. En consecuencia, ordenaría al Tribunal de Primera Instancia a

celebrar una vista para realizar una determinación preliminar con el propósito de establecer si debe ser admitida o no la evidencia de conducta específica distinta a la imputada por la que resultó el acusado absuelto en otro proceso, ello en consideración al expediente del proceso judicial anterior y con la salvedad de que la carga probatoria la llevaría el Estado.


                              Luis F. Estrella Martínez
                                  Juez Asociado